IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA,<br><br>   Plaintiff,<br><br>   vs.<br><br>GREG S. LEADER,<br>DOB: 6/25/52<br>AK ID/OL: 0267502<br>SSN: 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<br>ATN: 100-248-630<br><br>   Defendant. | FILED IN OPEN COURT<br>Date: 4·10·00 /s/ |



Court No. 3AN-S99-10664 Cr.

### JUDGMENT AND ORDER SUSPENDING IMPOSITION OF SENTENCE AND PROVIDING FOR PROBATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

DOMESTIC VIOLENCE OFFENSES Per AS 18.66.990(3) and (5)
   [ ] All Counts       [X] None       [ ] Specified Below

The defendant has been convicted upon his/her plea of:

| COUNT | DATE OF OFFENSE | OFFENSE | STATUTE VIOLATED |
|---|---|---|---|
| II | March, 1996-<br>August, 1997 | Tampering with<br>Public Records 1st | AS 11.56.815 |

and the following charge(s) were dismissed:

| | | | |
|---|---|---|---|
| I | March, 1996-<br>August, 1997 | THEFT 2nd | AS 11.46.130(a)(1) |

The defendant came before the Court on effective date (see last page) with counsel, William Bryson and the District Attorney present.

It appearing to the satisfaction of this court that

EXHIBIT
000019

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA, )
)
    Plaintiff, )
)
vs. )
) FILED in the Trial Courts
) State of Alaska, Third District
GREG S. LEADER, )
DOB: 6/25/52 ) **DEC 8 1999**
APSIN ID: 0267502 )
DMV NO. 0267502 ) Clerk of the Trial Courts
SSN: 574229792 ) By _NK_ Deputy
ATN: 100248630 )
)
    Defendant. )
_____ )

Case No. 3AN-S99-10664 Cr.

## INFORMATION

I certify this document and its attachments do not contain the (1) name of a victim of a sexual offense listed in AS 12.61.140 or (2) residence or business address or telephone number of a victim of or witness to any offense unless it is an address identifying the place of a crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

The following counts charge a crime involving DOMESTIC VIOLENCE as defined in AS 18.66.990: NONE

Count I
THEFT IN THE SECOND DEGREE
AS 11.46.130(a)(1)
Greg S. Leader - 001

Count II
TAMPERING WITH PUBLIC RECORDS IN THE FIRST DEGREE
AS 11.56.815
Greg S. Leader - 002

THE DISTRICT ATTORNEY CHARGES:

Count I

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

That on or about March, 1996, through August, 1997, at or near Anchorage in the Third Judicial District, State of Alaska, GREG S. LEADER, committed the crime of theft and the value of the property or services was $500 or more.

All of which is a class C felony offense being contrary to and in violation of AS 11.46.130(a)(1) and against the peace and dignity of the State of Alaska.

### Count II

That on or about March, 1996, through August, 1997, at or near Anchorage in the Third Judicial District, State of Alaska, GREG S. LEADER, with intent to obtain a benefit for any person, or to injure or deprive another person of a benefit, certified a public record setting out a claim against a government agency, or the property of a government agency, with reckless disregard of whether the claim was lawful, or that payment of the claim was not authorized in the budget of the government agency.

All of which is a class C felony offense being contrary to and in violation of AS 11.56.815 and against the peace and dignity of the State of Alaska.

The undersigned swears under oath this Information is based upon a review of AST reports 98-63476 submitted to date.

On September 18, 1998, Dane Larsen of the State Division of Legislative Audit reported to the Alaska State Troopers that he had been conducting an audit of the payroll records of Anchorage Airport Department of Transportation supervisor Greg S. Leader. The audit covered the period between January 1996 through August 1997. He discovered that Leader had been falsifying his payroll documents by claiming he had worked certain hours, when in fact he was absent from the job. During the time in

the ends of justice and the best interests of the public will be served thereby,

IT IS ORDERED that the sentencing of defendant is suspended for a period of 24 months.

Defendant shall pay restitution to State of Alaska in the total amount of $5,300.31. Defendant shall apply for and assign all yearly permanent fund dividend checks until restitution is fully paid. If the defendant is placed on probation, the defendant is to make additional payments toward satisfaction of restitution in accordance with a repayment schedule to be determined by defendant's probation officer. The restitution amount is to be paid in full three months before probation is to expire. Restitution is a direct order of the court, enforceable by contempt, as well as a condition of probation, if any.

Defendant is placed on probation to the Department of Corrections under the following conditions after serving his term of incarceration:

### SPECIAL CONDITIONS OF PROBATION - IMPRISONMENT

The defendant shall serve the following term(s) of imprisonment: NONE. (Credit for time served which is applicable to this case only).

### GENERAL CONDITIONS OF PROBATION

1. Report to the Department of Corrections Probation Office on the next business day following the date of sentencing; or, if time is to be served immediately after sentencing, then report to the Department of Corrections Probation Office on the next business day following release from an institution.

2. Secure the prior written permission of a probation officer of the Department of Corrections before changing employment or residence or leaving the region of residence to which assigned.

3. Make a reasonable effort to secure and maintain steady employment. Should you become unemployed, notify a probation officer of the Department of Corrections as soon as possible.

4. Report in person between the first day and the tenth day of each month, or as otherwise directed, to your assigned office of the Department of Corrections. Complete in full a written report when your probation officer is out of the office to insure credit for that visit. You may not report by mail unless you secure prior permission to do so from your probation officer.

5. At no time have under your control a concealed weapon, a firearm, or a switchblade or gravity knife.

6. Do not knowingly associate with a person who is on probation or parole or a person who has a record of a felony conviction unless prior written permission to do so has been granted by a probation officer of the Department of Corrections.

7. Make a reasonable effort to support your legal dependents.

8. Do not consume intoxicating liquor to excess.

9. Comply with all municipal, state and federal laws.

10. Report all purchases, sales and trades of motor vehicles belonging to you, together with current motor vehicle license numbers for those vehicles, to your probation officer.

11. Upon the request of a probation officer, submit to a search of your person, personal property, residence or any vehicle in which you may be found for the presence of contraband.

12. Abide by any special instructions given by the Court or any of its duly authorized officers, including probation officers of the Department of Corrections.

OTHER SPECIAL CONDITIONS OF PROBATION

a. Submit, at any reasonable time, to search of your person, personal property, residence, business, vehicle, or any vehicle under which you have control, for the presence of any stolen goods.

b. To pay full restitution in accordance with a repayment schedule determined by this agreement and/or the defendant's probation officer, to-wit: to State of Alaska in the total amount of $5,300.31.

c. To apply for and assign all yearly permanent fund dividend checks until restitution is fully paid.

d.  Perform 85 hours CWS.

THE PROBATION HEREBY ORDERED EXPIRES 24 months from date judgment is signed (see below)

It is further ordered that the Defendant be assessed a $100.00 surcharge to be paid within 10 days of the court's judgment. The court may allow a Defendant who is unable to pay the surcharge required, to perform community work service under AS 12.55.055(c) in lieu of the surcharge.

Any appearance bond in this case is:

( ) exonerated
( ) exonerated when defendant reports to the jail to serve the term of imprisonment
( ) _____

_____        _____
EFFECTIVE DATE                JUDGE OF THE SUPERIOR COURT

I certify that on _____      I certify that on _____
a copy of this judgment        a copy of this judgment
was sent to:                   was sent to:

____ DA                        ____ JAIL          ____ PROBATION OFFICER
____ DEF.ATTY.                 ____ DOC           ____ DPS-JUNEAU
_____         ____ DATA          ____ DPS-FINGERPRINT
                               ____ TERM.         ____ DEFENDANT, THROUGH
SEC./CLERK:_____                          _____
                               ____ OFF. LOC.
                               ____ EXHIBIT CLERK
                               ____ TICKLER PROGRAM

CLERK:_____

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA,                )
                                )
        Plaintiff,              )
                                )
    vs.                         )
                                )
GREG S. LEADER,                 )
                                )
        Defendant.              )
_____)
Court No. 3AN-S99-10664 Cr.

FILED IN OPEN COURT
Date 4-10-00

## DISMISSAL

Count I of the Information dated December 8, 1999, in the above-captioned case is hereby dismissed pursuant to Criminal Rule 43(a) in the interest of justice.

```
      DOB: 6/25/52
AK ID/OL: 0267502
      SSN: 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
      ATN: 100-240-630
      DOV: March, 1996 through August, 1997
      CHG: Theft in the Second Degree
```

DATED this 23 day of March, 2000, at Anchorage, Alaska.

BRUCE M. BOTELHO
ATTORNEY GENERAL

By: _____
Shannon D. Hanley #7906058
Assistant District Attorney

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA, )
        Plaintiff, )
  vs. )
GREG S. LEADER, )
DOB: 6/25/52 )
AK ID/OL: 0267502 )
SSN: 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 )
ATN: 100-248-630 )
        Defendant. )

FILED IN OPEN COURT
Date 4-10-00 4s

Court No. 3AN-S99-10664 Cr.

### CRIMINAL RULE 11 PLEA AGREEMENT

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

Pursuant to AS 12.55.085 - 12.55.110 and Alaska Rule of Criminal Procedure 11(e), the State of Alaska and the defendant advise the court that they have reached a Rule 11 plea agreement.

### TERMS OF THE AGREEMENT

1. The defendant agrees to enter a plea of guilty or no contest to the charge(s) in this case for the crime TAMPERING WITH PUBLIC RECORDS IN THE FIRST DEGREE which took place from on or March, 1996, through on or about August, 1997. If accepted by the court, the plea will result in the court suspending imposition of sentence for a period of 24 months pursuant to AS 12.55.085 - 12.55.100 from the date of acceptance of the plea.

2. The defendant acknowledges that the factual basis for the offense(s) charged would warrant a jury or a judge to conclude that the offense(s) were committed by defendant.

3. The defendant agrees to be placed on formal probation under the supervision of a probation officer of the Department of Corrections. The defendant will abide by any and all general and special conditions of probation as ordered by defendant's probation officer as well as any conditions imposed by the court.

4. If the defendant fails to abide by the conditions of this agreement or terms of probation, a petition to revoke defendant's probation may be filed and the Suspended Imposition of Sentence may be set aside and the court may impose a judgment of conviction and any sentence permitted by law.

5. If the defendant abides by every condition of this agreement and term of probation, the court, upon expiration of the probationary term, will discharge defendant, set aside the conviction, and issue a certificate to that effect.

6. The defendant acknowledges that this agreement has been discussed fully with counsel and is entered into with the advice and consent of counsel. The defendant fully understands the terms of this agreement and the consequences of abiding by or violating this agreement. Further, the defendant acknowledges that after full consultation with counsel, defendant has been informed and understands the following:

(a) The nature of the charge(s);

(b) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to the plea being taken, to wit: 0 to 5 years; $0 to $50,000.00;

(c) That defendant has the absolute right to plead not guilty or to persist in that plea if it has already been made;

(d) That by entering a plea of guilty or no contest, defendant is voluntarily

(1) waiving defendant's right to remain silent;

(2) waiving the right to call witnesses on defendant's behalf;

 (3) waiving the right to a speedy and public trial by jury or by judge;

 (4) waiving the presumption of innocence and the requirement that the State prove the charge beyond a reasonable doubt;

 (5) waiving the right to be confronted by and cross-examine the witnesses against defendant;

 (6) waiving defendant's right to appeal defendant's conviction or to appeal the terms of the agreed Suspended Imposition of Sentence in this case. However, the defendant retains the right to appeal any sentence that may hereafter be imposed if the Suspended Imposition of Sentence is revoked;

 (7) waiving the right to counsel at trial and on appeal;

 (8) waiving defendant's right to have a presentence report provided to the court pursuant to Criminal Rule 32 for purposes of receiving the Suspended Imposition of Sentence; provided, however, that if defendant violates the conditions of the Suspended Imposition of Sentence that the court <u>shall</u> order a presentence report before imposing sentence.

7. In addition to abiding by the general and special terms of probation as required by the court and/or the defendant's probation officer, defendant also agrees to the following **special conditions** of probation:

a. Submit, at any reasonable time, to search of your person, personal property, residence, business, vehicle, or any vehicle under which you have control, for the presence of any stolen goods.

b. To pay full restitution in accordance with a repayment schedule determined by this agreement and/or the defendant's probation officer, to-wit: to State of Alaska in the total amount of $5,300.31.

c. To apply for and assign all yearly permanent fund dividend checks until restitution is fully paid.

d. Perform 85 hours CWS.

8. If the defendant has never been fingerprinted and photographed or otherwise processed by the Department of Corrections, defendant shall do so within five calendar days from the date of signing of this agreement by presenting a copy of this signed agreement, (a) [males] at the Cook Inlet Pretrial Facility, Third Avenue at Post Road in Anchorage, Alaska, or (b) [females] at the Sixth Avenue Jail, 625 "C" Street, in Anchorage, Alaska, and submit to such processing. Failure to appear for processing shall be grounds to set aside the Suspended Imposition of Sentence and to impose sentence.

9. The defendant acknowledges and affirmatively represents to the court that, by entering this agreement:

    (a) Defendant is fully satisfied with the representation and advice of defendant's lawyer;

    (b) Defendant has fully discussed the charge(s) made against defendant in this case, potential defenses, sentencing ranges and this agreement with defendant's lawyer and is entering this agreement voluntarily, knowingly and intelligently;

    (c) Defendant understands that defendant is voluntarily giving up defendant's right to testify in defendant's own behalf at trial;

    (d) Defendant is voluntarily waiving the right to contest the lawfulness of any search or seizure or statements made to police in this case;

    (e) Defendant is presently not under the influence of alcohol, drugs or medication, and is not presently under the care of any physician, psychiatrist or psychologist.

10. By entering into this agreement the State does not waive its right to file notice of aggravating factors at any subsequent sentencing or disposition in this case.

11. The parties further represent that the terms of their agreement are completely set out by this document. The defendant acknowledges and represents that there have been no threats, coercion, or promises apart from this plea agreement.

CERTIFICATION OF PARTIES

I, GREG S. LEADER, defendant, certify that I have carefully read and understand the terms of this agreement and all of its consequences and have no questions. I am signing this document freely and voluntarily and agree to be bound by its terms or suffer the consequences set forth above should I violate any of the provisions of this agreement. I am not now under the influence of alcohol or drugs.

Defense counsel certifies to the court the following: That counsel has read this document, has explained the terms of this agreement and its contents to defendant, including but not limited to the minimum and maximum sentencing range and the Rule 11 requirements, that to the best of counsel's knowledge defendant understands the agreement and consents to its terms and that it is being entered into with the advice and consent of counsel.

_____   4/10/00
Defendant                        Date

_____   4-10-00
Counsel for Defendant            Date

_____   3/29/00
Assistant District Attorney      Date

question the defendant was a Department of Transportation supervisor in the field maintenance office at the Anchorage International Airport. Whenever Leader was absent from work, it would be necessary to have an OIC or acting supervisor work the shift in his place. By examining the payroll reports of the other workers who listed supervisory time on their payroll reports, and by examining the FAA-required field maintenance logs which would show who was the supervisor on each shift, it could be determined when the defendant was at work and when he was not. Many times where it showed he would not have been at work he submitted time sheets. The audit also found that the defendant was recording eight hours on his payroll on training days when the training only lasted 7.5 hours.

Trooper Cpl. Steve Garrett interviewed Rafael Velez. He stated he had worked for DOT at the Anchorage Airport since 1983. He has on occasion been the supervisor for the defendant's shift when the defendant was not there. Velez stated that there would be no reason for him to be the supervisor if the defendant was on the shift. If he put down that he was the supervisor on his payroll records, that meant the defendant was not working. Velez confirmed that he was the supervisor on the swing shift on October 7, 1996 and October 9, 1996, which meant the defendant would not have been working those days.

Cpl. Garrett then interviewed Coleman Hutchison. He also acted as a supervisor for a shift on several occasions when the actual supervisor was absent. He was shown his payroll report and the FAA logs for the shifts on January 21, 1997 and February 5,

1997. He stated he was the supervisor on those days and that the defendant would not have been working.

Barry Calhoun was also interviewed and he said that he would occasionally be the supervisor on shifts when the defendant was absent. Calhoun stated he became suspicious around September of 1997 that the defendant was putting down hours worked on his payroll when he wasn't there.

Jayme Lavender also acted as a supervisor for a shift if the defendant was not on duty. He was shown his payroll reports for October 24, 1996 and January 8, 1997 where it showed that he worked as the supervisor for those shifts. Lavender stated that he in fact worked as the supervisor on those shifts, and therefore the defendant would not have been on duty.

Stan Sorenson was also interviewed. Sorenson is retired from the DOT, where he worked as a mechanic at the airport. He stated that on a couple of occasions he saw the defendant's payroll report and noted that the defendant had put down he had worked when Sorenson knew that he didn't. Sorenson stated that he began to keep track on a calendar at the shop when Leader was absent, yet the records showed that he was working.

Cpt. Garrett interviewed Todd Hanley. During parts of 1997 and 1998 he worked with the defendant on the defendant's shift. He stated when both the defendant and the second in command, Tracy Sorenson were both absent, he was the acting supervisor. Hanley was shown copies of his payroll reports for August 21, 1996 and

July 23, 1997. He stated that he was the acting supervisor at that time which meant that the defendant could not have been working.

Tracy Sorenson was also interviewed. She stated that in the absence of the defendant, she would act as supervisor for the assigned shift. She stated that according to the payroll reports and the FAA reports, she was supervisor on April 29, 1996, June 16, 1996, August 4, 1996, September 8, 1996, September 15, 1996, September 30, 1996, April 20, 1997, May 11, 1997, June 3, 1997, July 20, 1997, August 10, 1997 and August 24, 1997. During those days the defendant would not have been at work.

On October 21, 1998, the defendant was interviewed by Cpl. Garrett. The defendant stated he had been working for DOT for 20 years. He had been a foreman or supervisor since 1996. The defendant stated that shortly after becoming foreman, he began claiming time on his payroll when he wasn't at work. He said he would come to work for three or four hours and then leave, but would claim the entire shift on his time sheet. He figured he had given the State lots of time after shift or before shifts when he would hang around talking with other foremen, and felt that he should get some of that time back. The defendant was shown the records and was not surprised at the total number of hours he falsified or the dollar amounts improperly given to him. The defendant asked if there were any way to pay the money back.

The final audit report concluded that between January 1996 and August 1997, the defendant signed 24 separate time sheets showing hours that he purportedly worked when he was actually not at work. It also found 19 incidents were the defendant reported working eight hours when he only worked 7.5 hours during training. The total

amount of benefits and wages paid to the defendant for work he did not do was $5,300.31. The total number of hours he falsely recorded on his payroll reports was 154.5 hours. On each of the 24 payroll reports which contained falsely recorded time, the defendant signed his payroll report under a printed declaration on the form which stated that to knowingly make a false entry on the form was a violation of the offense of tampering with a public record.

### BAIL INFORMATION

The defendant has the following criminal history.

| | |
|---|---|
| 05/25/1990 | DWI |
| 03/29/1974 | Larceny |
| 06/03/1973 | DWI |

Dated at Anchorage, Alaska, this 8th day of December, 1999.

BRUCE M. BOTELHO
ATTORNEY GENERAL

By: _____
Mary Anne Henry 7610097
Assistant District Attorney

SUBSCRIBED AND SWORN to before me this 8th day of December, 1999 at Anchorage, Alaska.

_____
Notary Public in and for Alaska
My commission expires: 11-21-02

Th. management did not go after any of these Airport workers for reporting outside the chain of command. John Suter