0756

RD: 25801

**STATE OF ALASKA**
**PERSONNEL ACTION**

NAME

| | | SOCIAL SECURITY NUMB | EFFECTIVE DATE | DOCNO |
| --- | --- | --- | --- | --- |
| OLD | | | | |
| NEW | BILLINGHAM,ELSA | 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 | 05-25-94 | 027253491 |

STATUS:

| | ACTION | STATUS | SEASONAL | COMMENT CODE | COMMENT DESCRIPTION | |
| --- | --- | --- | --- | --- | --- | --- |
| OLD | | | | | | |
| NEW | AP | PR | FS | NH | NEW HIRE | |

COMPENSATION:

| | ACTION | RATE FREQUENCY | PAY RATE | RATE OVERRIDE | MERIT ANN DATE | |
| --- | --- | --- | --- | --- | --- | --- |
| OLD | | | | | | |
| NEW | AP | H | 13.32 | N | 06-16-95 | |

POSITION:

| | ACTION | BARG | RANGE | STEP | PCN | ACTING | LOC | JOB CLASS | SAL SCHED |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| OLD | | | | | | | | | |
| NEW | AP | LL | 50 | A | 252584 | N | EBF | P9398 | 2A |

LOCATION NAME: ANCHORAGE INTL. AIR        CLASS TITLE:    : LABORER WG VIII

MANUAL ENTRIES: OT EXEMPT        (OPTIONAL) COLLOCATION CODE:    OLD:
                                 (PRIMARY LABOR DISTRIBUTION)   NEW:

| | | | | |
| --- | --- | --- | --- | --- |
| HOME ADDRESS: | OLD: | STATE: | ZIP: | |
| | CITY: | | | |
| WARRANT ADDRESS: | | STATE: | ZIP: | |
| | CITY: | | | |

NEW: PO BOX 231625        STATE: AK   ZIP: 99523
CITY: ANCHORAGE

REMARKS:    Appointment.

ATTACHMENTS:    Authority. (I-9 & affidavit to follow.)

PREPARED BY: MYPARKER    06-07-94
             SIGNON      DATE

I CERTIFY THAT BASED ON INFORMATION
AVAILABLE TO ME THE ACTION RECORDED
ON THIS FORM IS IN COMPLIANCE WITH THE
PERSONNEL ACT AND THE RULES ADOPTED
UNDER IT.

SIGNATURE OF
APPOINTING AUTHORITY    6/13/94
                        DATE

Exh. A, Att. 8
Page 1 of 1

EXHIBIT
15
E. Billingham
9-25-07

Anchorage
International
Airport

# MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities

**To:** Elsa Billingham
Laborer, ANC

**From:** N. Wayne Gibson
Manager, Airfield Maintenance

**Date:** November 13, 1996

**Telephone:** 266-2425

**Subject:** Letter of Instruction

October 12, 1996 after you arrived to work you were dispatched to use a sander by Mr. Fred Klouda. However, before you left the Airfield Maintenance Compound with the sander you were re-dispatched to work the sidewalks. At some point shortly after reaching the sidewalks you asked Mr. Leslie Fetrow to take you to your car as "you were going home". Mr. Fetrow took you to your vehicle and you left without notifying your shift supervisor of the reason for leaving. Later that evening you made a phone call to Mr. Klouda at his residence and made no mention of being ill during the phone conversation.

In talking with you the following afternoon, you indicated to me that you had gone home sick and did not want to bother the shift leader because he was busy. At that time I asked you for doctors verification that you were sick. You supplied the requested doctor's slip when I asked for it the second time.

Doctor Fred Schriver, M.D. confirmed that you were supposed to off work from October 7 through 14, 1996. However, it appears in looking at your time and equipment report that you worked an entire shift on the eighth, the eleventh, the thirteenth, and the fourteenth. Also indicated on your time and equipment report you were on sick leave the entire shifts of the ninth and tenth, and the entire shift of the twelfth.

In looking at the doctor's slip signed by Doctor Schriver it states that you were to be off work for medical reasons and was dated October 12, 1996. While it is commendable that you were willing to work during a serious snow event that was ongoing at the time if you were so sick that you had to be excused from work for medical reasons I would question why you would try to work four days out of the seven that you were supposed to be off work.

When you came to work on the twelfth then left without telling your shift supervisor you went against established policy. The shift supervisor was left to assume least two possibilities; either you got mad and left without informing him you were leaving, or you were injured and left without informing him you were leaving. Both of which are unacceptable scenarios.

EXHIBIT

17
E. Billingham

Exh. A, Att. 9
Page 1 of 2
0389

**Anchorage
International
Airport**

# MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities

It is re-emphasized that except at the end of your shift or during lunch break you shall inform your shift supervisor anytime that you are leaving to go home. Additionally, your are to remain off work when instructed by a doctor to do so. Failure to comply with these instructions will result in further disciplinary action up to and including dismissal from State employment.

You are reminded of your right to union counsel on this matter.

Cc:    Laborers Local 71
       Labor Relations
       Headquarters Personnel
       Personnel

STATE OF ALASKA
PERSONNEL ACTION

RD: 25801

NAME: BILLINGHAM, ELSA

SOCIAL SECURITY NUMB: 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

EFFECTIVE DATE: 08/01/1997　06/16/1998

DOCNO: 026015096　027254928

STATUS:
OLD
NEW

ACTION
IC

STATUS
PR

SEASONAL
FS
FR

COMMENT CODE

COMMENT DESCRIPTION

COMPENSATION:
OLD
NEW

ACTION
IC
PR

BARG
LL

RANGE
56    B
57

STEP

PAY RATE
16.13
17.17

PCN
252615
252566

ACTING
N

RATE OVERRIDE
N

MERIT ANN DATE
06/16/1998

POSITION:
OLD
NEW

ACTION
MU
PR

RATE FREQUENCY
H

LOC
EBF

JOB CLASS
P9398
P9357

SAL SCHED
2A

CLASS TITLE: LABORER WG VIII
: EQUIP OPERATOR I

LOCATION NAME: ANCHORAGE INTL. AIR
: ANCHORAGE INTL. AIR

MANUAL ENTRIES:

OT EXEMPT

(OPTIONAL) COLLOCATION CODE:
(PRIMARY LABOR DISTRIBUTION)
OLD:
NEW:

HOME ADDRESS:
OLD: PO BOX 231625
CITY: ANCHORAGE
STATE: AK
ZIP: 99523 1625
NEW:
CITY:
STATE:    ZIP:

WARRANT ADDRESS: PO BOX 231625
CITY: ANCHORAGE
STATE: AK
ZIP: 995231625

REMARKS:

Promotion to Eq Op I eff 6/1/98

ATTACHMENTS:

Authority

PREPARED BY: WFPARKER
SIGNON
06/25/1998
DATE

SIGNATURE OF
APPOINTING AUTHORITY
DATE

I CERTIFY THAT BASED ON INFORMATION
AVAILABLE TO ME THE ACTION RECORDED
ON THIS FORM IS IN COMPLIANCE WITH THE
PERSONNEL ACT AND THE RULES ADOPTED
UNDER IT.

EXHIBIT
E. Billingham
19
8-25-07

Exh. A, Att. 10
Page 1 of 1

0070





95-3172

EXHIBIT
21
E. Billingham

REPAIR ORDER # _____

## STATE OF ALASKA
## DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES
## STATE EQUIPMENT FLEET

## EQUIPMENT DAMAGE REPORT

EQUIPMENT LICENSE # *31239*

MAKE/MODEL OF EQUIPMENT _____ *1500 CHEVY 1/2 TON P/U* ____ DEPARTMENT/SECTION *DIA/FM* ____ CLASS

OPERATORS NAME *ELSA BILLINGHAM* SUPERVISORS NAME *CASIE KNODLER*

LOCATION DAMAGE OCCURED *AOA SIDE FENCELINE BY TOWER.*

DATE DAMAGE OCCURED *8/31/98* ____ HOUR OF DAY *0500*

DESCRIPTION OF DAMAGE *BACK WINDOW IS SHATTERED*

DESCRIBE WHAT HAPPENED *I WAS STANDING IN THE BED OF THE P/U. I WAS POSITIONING PALLETS IN THE BED OF THE TRUCK. I DROPPED ONE OF THE PALLETS. THE CORNER HIT THE BACK WINDOW OF THE TRUCK.*

WHAT CAUSED DAMAGE *DROPPING A HEAVY PALLET TOO CLOSE TO A WINDOW. I WOULD LIKE TO MAKE A PROPOSAL THAT ALL THE LABORERS PICKUPS AT FM BE EQUIPPED WITH THE METAL MESH SCREENS LIKE THE FOREMANS PICKUPS.*

ERVISORS COMMENT *This accident could have been vented by being more careful when loading the pickup. Foreman Casie M. Knadler 8-31-98*

Exh. A, Att. 11
Page 1 of 2

0878

# STATE OF ALASKA
## SUPERVISOR'S ACCIDENT INVESTIGATION REPORT

Name of Injured (Equipment/Property) _P·U·#20 PlATE NUMBER 31239  BACK WINDOW_
_BROKEN  BY  ELSA  Billingham_

Job or Activity at Time of Accident: _PICKING  UP  PAllOT'S_

Exact Location: _A·GA· FENCE BASE OF the TOWER_     Date of Accident: _8-31-98_

Time: _5·AM_

**1. WHAT HAPPENED?** _ELSA Billingham WAS,_    Tell what the employee was doing, how the accident occurred, and
_LoAding up P·U·#20 with PAllOTS_    what thing directly injured the employee.
_The PAllOTS in The P·U·#20 AND ONE OF The PAllETS_
_WENT THRU the BACK WINDOW_

**2. WHY DID IT HAPPEN?** _ELSA Billingham WAS_    Get all the facts by studying the job and situation involved. Use the
_NOT BEING CAREFUll ABOUT WhAT_    following factors to help you identify the condition responsible.
_She WAS doing She WAS THROWING_    **OPERATION FACTORS TO BE CONSIDERED:**
_The PAllETS in the TRUCK_

| Proper | Proper | |
|---|---|---|
| Equipment | Material | People |
| Selection | Selection | Selection |
| Arrangement | Placement | Placement |
| Use | Handling | Training |
| Maintenance | Use | Supervision |

**3. WHAT SHOULD BE DONE?** _do NOT THROW_
_ANY thing in the PICK UPS TAKE YOUR TIME ANd do The_    What action(s) will prevent similar accidents in the future?
_JOB Right_

**4. WHAT HAVE YOU DONE THUS FAR?** _I have TAlkEd,_    Take or recommend action, depending on your authority.
_With ElSA ANd told her NOT TO THROW ANYThing iNTO_
_The PICK UPS ANd slow things down_

**5. HOW WILL THIS IMPROVE OPERATIONS?** _I'M  NOT SurE_    How will it help us meet our objective: ACCIDENT PREVENTION?
_ElSA A LOT OF TiMES WONT LISTEN TO WhAT YOU TEll_
_her MAY BE This TIME She Will CAtCh ON_

**6. WHAT IS YOUR ROUGH ESTIMATED COST OF THIS ACCIDENT?**

Cost of lost wages and medical expenses? ............................................

Damage to State property or equipment? _$125·00_                      **0879**

Damage to third parties, property and people? ............................................

TOTAL _125·00_        **Exh. A, Att. 11**
**Page 2 of 2**

Investigated By: _Craig A. Arthur_

Unit/Division/Department: _D·O·T FieldMAINTANCE_        Date: _9-2-98_

02-932 (Rev 3-83)        COMPLETE INSTRUCTIONS ARE ON THE BACK

# STATE OF ALASKA
## PERSONNEL ACTION

RD: 25801

**SOCIAL SECURITY NUMB** 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

**EFFECTIVE DATE** 12/01/1998 07/01/1999

**DOCNO** 027255053 027255261

**NAME** BILLINGHAM,ELSA

| | ACTION | STATUS | SEASONAL | COMMENT CODE | COMMENT DESCRIPTION |
|---|---|---|---|---|---|
| STATUS: | IC | FE | FR | | |

| | ACTION | | | | | |
|---|---|---|---|---|---|---|
| POSITION: | MU | | | | | |
| OLD | | | | | | |
| NEW | PR | | | | | |

**COMPENSATION:**

| | ACTION | RATE FREQUENCY | | PAY RATE | RATE OVERRIDE | MERIT ANN DATE |
|---|---|---|---|---|---|---|
| OLD | MU | H | | 17.27 | N | 06/16/1998 |
| NEW | PR | | | 16.34 | N | |

| | BARG | RANGE | STEP | PCN | ACTING | LOC | JOB CLASS | SAL SCHED |
|---|---|---|---|---|---|---|---|---|
| OLD | LL | 57 | B | 252566 | N | EBF | P9357 | 2A |
| NEW | | 56 | | 252566 | N | EBF | P9511 | |
| | | | | | | | P9357 | |

LOCATION NAME: ANCHORAGE INTL. AIR
: ANCHORAGE INTL. AIR

MANUAL ENTRIES:

OT EXEMPT

OLD:
NEW:

(OPTIONAL) COLLOCATION CODE:
(PRIMARY LABOR DISTRIBUTION)

OLD:
NEW:

CLASS TITLE: EQUIP OPERATOR I
: ELECTRONIC TECH III

**POSITION:**

**STATUS:**

**HOME ADDRESS:**
OLD: PO BOX 231625
CITY: ANCHORAGE        STATE: AK    ZIP: 995231625

WARRANT ADDRESS: PO BOX 231625
CITY: ANCHORAGE        STATE: AK    ZIP: 995231625

NEW:
CITY:        STATE:        ZIP:

**REMARKS:**

**ATTACHMENTS:**

TITLE CHANGE/PROMOTION PER LTC STUDY
(LOA 2000-LL-052-4a) I, II, d)

CAREER AREA/LEVEL: EQUIPMENT
OPERATOR/SUB-JOURNEY II

**PREPARED BY:** WYPARKER        06/29/1999
SIGNON        DATE

I CERTIFY THAT BASED ON INFORMATION
AVAILABLE TO ME THE ACTION RECORDED
ON THIS FORM IS IN COMPLIANCE WITH THE
PERSONNEL ACT AND THE RULES ADOPTED
UNDER IT.

SIGNATURE OF
APPOINTING AUTHORITY        DATE

PENGAD 800-631-6989

E. Billingham
22
9-25-07

EXHIBIT

0731  Exh. A, Att. 12
Page 1 of 1

# MEMORANDUM

## State of Alaska
### Department of Transportation & Public Facilities

TO:  Elsa Billingham

DATE:  April 23, ~~1999~~ 2000

FAX NO:  (907) 266-2427
TELEPHONE NO:  (907) 266-2677

FROM:  Daniel Hartman
Manager
Airfield Maintenance

SUBJECT:   Letter of Expectation

It has been brought to my attention that on 6 April 2000 you left your duty station early for lunch.  Your supervisor stated that he witness you driving your private vehicle at 7:18 P.M. at the intersection of Postmark and International Airport Road.  Your lunch period did not begin until 7:30 P.M.

Leaving you duty section without prior approval from your supervisor is and will not be allowed. Your lunch break is for 30 minutes, stretching that time to 45 minutes is also not acceptable.

You are directed to fill out a leave slip for the 15 minutes that you left early for your lunch and you will refrain from any actions like this in the future or disciplinary action will be taken.

EXHIBIT
24
E. Billingham
9-25-07

Exh. A, Att. 13
Page 1 of 1



**Anchorage
International
Airport**

State of Alaska DOT & PF
PO Box 196960
Anchorage, Alaska
USA 99519-6960
(907) 266-2525
FAX (907) 243-0663

July 31, 2000

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, AK. 99523-1625

RE: Suspension

Dear Ms. Billingham:

On July 19th it was reported that you failed to follow an order given to you by Sam LaCosta to use a push mower to mow the area in front of the PPO Warehouse at 3950 Aircraft Drive. You elected instead to use the Honda rider mower and during the brief time you were mowing this area a rock apparently was thrown by the mower hitting a passing vehicle window causing minor injuries to the driver. This window was replaced at the cost of $300.00. Fortunately, the driver did not need to seek medical attention for herself or her child.

A pre-disciplinary hearing was held July 25th in my office with Valerie Baffone as your union representative. You were given an opportunity to explain your actions that day and what occurred prior to this incident. You reported that Sam did direct you to mow that area in front of the PPO Warehouse with a push mower but stated he did not explain why. You claimed that you have worked in landscaping for the past five summers and felt capable of selecting the appropriate type of mower to use for this job. According to you the grass had not been cut all summer so the grass was thick and wet making it difficult to cut. You further claimed that after trying to cut the grass in the ditch with a weedwacker you decided to use the Honda rider mower for the rest of the area. Another co-worker testified that he had mowed the area three weeks prior to July 19th and had informed you of the rocks in the area that day.

Your supervisor stated he told you several times to use the push mower for the job because; 1) the area was too small for anything else, and 2) the grade was steep and a larger mower could flip over. An eyewitness to this conversation confirmed Sam's account of events.

After considering the information that was shared at this meeting, I conclude your behavior was unacceptable on July 19th. You were clearly directed several times to use a particular piece of equipment to mow the area but you failed to do so. As a result of your actions the State of AK, DOT&PF was held liable for the damage that occurred to a passing motorist's vehicle. It was just fortunate that the driver and her child were not seriously injured. You failed to accept any responsibility for your actions, you did not express any remorse for the outcome, and you were not entirely honest during the hearing. Therefore, you are suspended without pay and benefits for three (3) days. You will be placed on suspension August 3, 2000 through August 5, 2000. You will report back to work on Tuesday August 8, 2000.

The incident above represents several forms of unacceptable workplace behavior and performance including failure to accept supervision and follow instructions. You need to be aware that any future occurrences of this nature will result in further disciplinary action up to and including termination.

Sincerely,

Daniel A. Hartman
Manager, Airfield Maintenance

**EXHIBIT**
26
E. Billingham 9-25-07

Exh. A, Att. 14
Page 1 of 1

Cc:     Corky Caldwell
        Janet Rider, HRM
        Anchorage Human Resource Office
        Local 71, Anchorage

**Ted Stevens
Anchorage
International Airport**

Airfield Maintenance
4100 Airfield Drive
Anchorage, AK 99502
Phone (907)266-2425
Fax (907)266-2677

September 7, 2000

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, Alaska 99523-1625

RE: Suspension

Dear Ms. Billingham:

The department has been reviewing an incident that occurred August 11th in which it was reported that you tore a page out of the foreman's logbook and ripped it into shreds. Then you initially denied it when asked by the foreman.

A pre-disciplinary meeting was held August 24th in my office with Jim Dommek as your union representative. You were given an opportunity to explain your actions that day and what occurred prior to this incident. You stated that you thought someone left his or her purse/wallet in the breakroom that day so you looked in it to see whom it belonged to. Upon opening it you realized it was a book so you proceeded to read through it. On one page you read some comments made regarding training you were given that day. You stated that it "caught you off guard when he wrote you up", so you got upset and tore it up.

After repeated questioning you admitted to throwing the torn page in the garbage in the ladies room (not the garbage in the breakroom). You also admitted that Roberto told you it was Rusty's logbook while you were looking through it. Then you denied the incident when first asked about it by the foreman. You apologized for your behavior and admitted that it was wrong.

After considering the information that was shared at this meeting, I concluded your behavior on August 11th was unacceptable for the following reasons:
1) You destroyed State property even after another employee told you it was the foreman's logbook.
2) You were clearly not honest and straightforward about the incident at the pre-disciplinary meeting.

While your years of state service and your expression of remorse were considered mitigating factors, your previous discipline and your failure to participate in the proceedings in a truthful and straightforward manner aggravated your penalty. Therefore, you are suspended without pay or benefits for five (5) days. You will be placed on suspension September 8, 2000 through September 14, 2000. You will report back to work at 3:30 p.m. on September 15, 2000. You will also be scheduled to attend a mandatory anger management class in the near future.

You need to be aware that any future occurrences of this nature will result in further disciplinary action up to and including termination.

Sincerely,

Daniel A. Hartman
Manager, Airfield Maintenance

CC:    Corky Caldwell
       Janet Rider, HRM
       Anchorage Human Resource Office
       Local 71, Anchorage

EXHIBIT
27
E. Billingham
Exh. A, Att. 15
Page 1 of 1
0134



**Ted Stevens**
# Anchorage
**International Airport**

Airfield Maintenance
4100 Airfield Drive
Anchorage, AK 99502
Phone (907) 266-2425
Fax (907) 266-2677

EXHIBIT
28
E. Billingham
9-25-07

December 26, 2000

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, Alaska 99523-1625

RE: Suspension

Dear Ms. Billingham:

On November 30, 2000 it was reported that you failed to follow an order given to you on three occasions by your foreman Fred Klouda. The order was to clear the sidewalks of a small amount of snow at the North and South Terminals using a shovel. Two other employees given the same order that day followed Mr. Klouda's instructions without difficulty.

A meeting was held December 6th in my office with steward James Dommek as your union representative. You were given an opportunity to explain your actions that day. You did state that Fred Klouda directed you and two other employees to clear the sidewalks that day using shovels. You also admitted to asking Mr. Klouda several times if you could use the four-wheeler and were told "no" each time. Your explanations did not justify your disregard of what was a safe and lawful order.

Evidence and testimony show you used a four-wheeler to try to remove snow after repeatedly being told not to. Your supervisor says he told you not to use the four-wheeler because it would pack down the small amount of snow on the sidewalks instead of removing it, thereby creating hazardous walking conditions for the traveling public and airport personnel.

After considering the information that was shared at this meeting I conclude your behavior was unacceptable on November 30th. You were clearly directed four times to use a shovel to clear the sidewalks but you failed to do that. You have received two other suspensions in the past five months for the same type of behavior. Because of your failure to accept responsibility and continuing refusal to comply with your supervisor's instructions you are suspended without pay and benefits for ten (10) working days. Based on your work record and previous discipline there is no basis to mitigate this penalty. You will be placed on suspension from January 2, 2001 through January 15, 2001. You will report back to work on January 16, 2001.

Exh. A, Att. 16
Page 1 of 2

These issues above represent several forms of continuing unacceptable workplace behavior and performance including but not limited to failure to accept supervision, failure to follow instructions and failing to accept responsibility for your actions. This behavior is unacceptable and must change if you are going to remain employed by the State of Alaska.

0132



**Ted Stevens**
**Anchorage**
**International Airport**

Ms. Elsa Billingham
December 26, 2000

Accepting supervision, following instructions and accepting responsibility are basic
requirements of the employment relationship. These requirements are of a nature that
additional time for training and instruction is not necessary, your compliance should be full
and immediate.

Your supervisor is the individual responsible for all his subordinates' actions and is the
expert in determining the best piece of equipment to utilize in performing different tasks.
Your continued refusal to comply with his directives places the traveling public and fellow
employee's lives and safety in serious jeopardy. You need to be aware that if you continue
to ignore your supervisor's directives the State will have no recourse except to consider
terminating you from your position. To continue employing someone with a propensity for
creating unsafe conditions is a liability the State cannot accept.

I encourage you to comply with your supervisor's directives in the future and conduct
yourself as a valuable employee for the Department of Transportation.

Sincerely,

Dan Hartman
Manager, Airfield Maintenance

cc:    Corky Caldwell
       Janet Rider, HRM
       Anchorage Human Resource Office
       Local 71, Anchorage

EXHIBIT

0-25-6

29

E. Billingham

PENNAD 800-531

**STATE OF ALASKA**
**PERFORMANCE EVALUATION REPORT**

| NAME | SOCIAL SECURITY NO | DEPARTMENT | DIVISION |
|---|---|---|---|
| Elsa Billingham | 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 | DOT/PF | Anch. Int'l Airport |

| PCN | JOB CLASSIFICATION TITLE | REPORT COVERAGE | |
|---|---|---|---|
| 252566 | Sub-Journey Equipment Oper. II | FROM 6/15/00 | TO 2/1/01 |

REASON FOR REPORT

☐ ANNUAL ☐ RESIGNATION ☐ COMPLETION OF PROBAT

POSITION DESCRIPTION REVIEWED BY RATER

YES ☒ NO ☐ If no, explain:

SPECIFIC RATING AREAS

*U  A  O
☒  ☐  ☐

**PERFORMANCE**

(As shown by: quantity, quality, accuracy, and complete-ness of work; knowledge of job fundamentals; judgment shown on the job; willingness and ability to carry out new assignments; independence of performance; attitude towards job.)

**WORK HABITS**     ☐ ☒ ☐

(As shown by: attendance, punctuality; appearance and grooming; safety.)

**INTERPERSONAL RELATIONSHIPS**     ☒ ☐ ☐

(As shown by: consideration of public and coworkers; acceptance of supervision.)

**SUPERVISORY** (for Supervisory     ☐ ☐ ☐
Employees Only)

(As shown by: training and directing subordinates; evaluating employees; planning and organizing work, including delegation; problem solving and decision-making ability; affirmative action achievement; cost effectiveness; and, Labor Contract Administration).

*U = Unacceptable; A = Acceptable; O = Outstanding
02-252 (8-83)

NARRATIVE SECTION

Overall Effectiveness on the Job

(Overall Effectiveness MUST be explained. Other performance consideration, such as strong points and areas needing improvement, should be included.)

U                    Acceptable                    O
☒                    ☐                             ☐

Ms. Billingham's performance for the past few months has been marked with several instances of failure to foll supervisory instructions and was disciplined for her actions. There are times when her judgement concerning job tasks is suspect. On one such occasion her failure to follow instructions caused injury to the traveling public. She seems to feel that she knows more than her supervisors know and has a tendency to argue with them. When questioned about such instances, Elsa will not accept reasonable responsibility for her actions (or inaction) and perform above her pay grade and at times barely performs satisfactorily at the grade she now holds. This may no all Elsa's fault; she was moved up to a higher pay grade and expected to perform at that level due to a LTC study. consequently, our ability to allow her to work independently is greatly diminished. Elsa continually is unable to

Elsa can improve her performance greatly by learning to listen to instructions, act responsibly and ask questions situation is beyond her capabilities. The one on one training that Elsa has been receiving on more difficult equipm will stop until she can perform satisfactorily at her present pay level. Elsa will be given remedial training on equipment in her wage grade as required. Elsa's performance needs to be evaluated every 60 days until she can perform proficiently.

Elsa can perform at a lower pay grade in most work assignments. For this period of time her performance is un-acceptable.

Rater's Recommended Action:   This is an interim report.
(See Instructions over)

Rating was discussed with employee     ☒ Yes    ☐ No    If no, explain:

Signature of Rater _____                    Title _____    Date _____

Employee: ☐ Concur with Rating    ☒ Disagree (Employee comments are attached)

Signature: _____

REVIEWED AND APPROVED BY:

Division
Signature: _____                                              Date _____

Department
Signature: _____    Title _____ Date 3-20

Title _____ Date _____

# DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES LTC EVALUATION CHECK LIST

EMPLOYEE: Elsa Billingham

RATING PERIOD FROM: 6/16/00    TO: 2/15/01

| SECTION 1 - PERFORMANCE | (COMPLETE FOR ALL EMPLOYEES) | | EMPLOYEES INITIALS/DATE | RATER's INITIALS/DATE |
|---|---|---|---|---|
| **1. QUANTITY** Consistently fails to meet established work quantity standards. ☒ | Frequently fails to meet established work quantity standards. ☐ | Usually meets established work quantity standard. ☐ | Meets and occasionally exceeds established work quantity standards. ☐ | Always meets and frequently exceeds established work quantity standards. ☐ |
| **2. ACCURACY** Work consistently inaccurate; makes frequent serious errors. ☒ | Work frequently inaccurate; constantly requires checking. ☐ | Work usually accurate; occasionally needs revision; free from serious error. ☐ | Work always accurate and carefully done; errors are rare. ☐ | Work is superior in accuracy and consistently free from error. ☐ |
| **3. DEADLINES** Consistently misses deadlines; work incomplete; does not monitor task progress. ☒ | Sometimes misses deadlines; work often incomplete; monitors task progress poorly. ☐ | Almost always meets deadlines; work usually completed; monitors task progress adequately. ☐ | Rarely misses deadlines; monitors task progress to ensure completion. ☐ | Misses deadlines only under circumstances and with the knowledge of supervisor; tasks always completed. ☐ |
| **4. JOB SKILLS** Not enough knowledge of necessary job skills; cannot perform many basic job duties. ☒ | Has some knowledge and skills necessary for routine portions of the job; unable to perform some job duties. ☐ | Knowledgeable and skilled in all phases of the job; capable of performing all job duties. ☐ | Broad knowledge of job skills; able to perform all phases of the job proficiently. ☐ | Performance demonstrates exceptional understanding and aptitude for the job; extremely well informed in all aspects. ☐ |
| **5. JUDGMENT** Evaluates situations poorly and makes unwise choices; consistently demonstrates inadequate judgment. ☒ | Has limited ability to evaluate situations and make decisions; frequently does not use good judgment. ☐ | Evaluates situations reasonably well; usually makes good choices; but with occasional errors of judgment. ☐ | Consistently uses good judgment in evaluating situations and making decisions. ☐ | Always uses good judgment in evaluating situations and making decisions; is very adept at handling difficult situations. ☐ |
| **6. NEW TASK** Unwilling to take on new tasks. ☐ | Will take on new tasks but is hesitant to do so; need guidance to ensure follow-through. ☒ | Willingly performs new tasks; needs a moderate amount of guidance. ☐ | Consistently accepts and displays confidence in performing new tasks; needs little guidance. ☐ | Eagerly accepts and displays confidence in performing new and difficult tasks; needs no guidance. ☐ |
| **7. SELF-RELIANCE/ INITIATIVE** Displays little or no ability to work independently. ☒ | Displays limited self-reliance; somewhat able to work independently. ☐ | Displays adequate self-reliance and ability to work independently. ☐ | Displays consistent initiative and self-reliance; works well independently. ☐ | Displays dynamic initiative and self-reliance; needs no supervision or assistance. ☐ |
| **8. ATTITUDE** Little or no interest in or enthusiasm for the job; indifferent attitude. ☐ | Interest in or enthusiasm for the job is lacking or inconsistent; positive attitude limited. ☐ | Usually displays interest is and enthusiasm for doing a good job; generally positive attitude. ☒ | Displays consistent interest in and enthusiasm for the job; maintains a positive attitude. ☐ | Superior interest in and enthusiasm for doing a good job; extremely positive attitude. ☐ |
| **9. ABILITY TO MANAGE STRESS/CHANGE** Unable to perform adequately in other than routine situations; lacks flexibility. ☐ | Performance declines under stress or in other than routine situations; may react inappropriately to stressful situations. ☐ | Performs reasonably well under stress or in unusual situations; rises to challenges; accepts change. ☐ | Performance excellent even under pressure. Very stable and objective; reliable in difficult situations. ☐ | Outstanding performance under extreme stress; appreciates the challenge of difficult situations. ☐ |

COMMENTS:

**0051**

## SECTION 2.- WORK HABITS (COMPLETE FOR ALL EMPLOYEES)

| | | | |
|---|---|---|---|
| **1. ATTENDANCE** Documented abuse of sick leave during rating period; failure to notify supervisor of absence; frequent failure to secure approval of days off. Consistently tardy. | ☐ Pattern indicating sick leave taken in conjunction with regular days off; vacation/days off is not always prearranged; frequently tardy. | ☒ Sick leave use justifiable and at acceptable levels; some impact on work unit; vacation/days off are prearranged; occasionally tardy. | ☐ Minimal use of sick leave which is justified; minimal impact on work unit; vacation/days off are prearranged to minimize impact; rarely tardy. | ☐ Sick leave use is minimal and does not impact work unit; vacation/days off are always prearranged to eliminate impact on work unit; tardy |
| **2. APPEARANCE AND GROOMING** Personal appearance and/or grooming unsatisfactory. | ☒ Acceptable personal appearance and grooming. | | |
| **3. SAFETY** Consistently not safety-conscious. | ☒ Frequently not safety-conscious. | ☐ Usually safety-conscious. | ☒ Safety-conscious; alert to problems. | ☐ Highly safety-conscious; alert to safety problems and assist in correction them immediately. |

COMMENTS:

## SECTION 3 – INTERPERSONAL RELATIONSHIPS (COMPLETE FOR ALL EMPLOYEES)

| | | | |
|---|---|---|---|
| **1. HUMAN RELATIONS** Ineffective in working with others; does not cooperate. | ☒ Has difficulty getting along with others, accepting supervision, or being tactful. | ☐ Gets along well with others under most circumstances; communicates effectively with others. | ☐ Works in harmony with others; very good team worker; above average skills in human relations. | ☐ Extremely successful in working with others; actively promotes positive interactions. |
| **2. ACCEPTANCE OF SUPERVISION** Limited or no cooperation with supervisor; poor acceptance of supervision. | ☒ Has some difficulty in cooperating with supervisor, limited acceptance of supervision. | ☐ Cooperates with supervisor; satisfactory acceptance of supervision. | ☐ Readily cooperates with supervisor; accepts supervision well. | ☐ Enthusiastically cooperates with supervisor; superior acceptance of supervision. |

COMMENTS:

## SECTION 4 – SUPERVISORY (COMPLETE FOR LEAD PERSONNEL ONLY)

| | | | |
|---|---|---|---|
| **1. TRAINING AND LEADING EMPLOYEES** Little or no success in training, leading, and communicating with employees. | ☐ Inconsistent or limited success in training, leading, and communicating with employees. | ☐ Moderate success in training, leading, and communicating with employees. | ☐ Consistently able to train, lead and communicate with employees effectively. | ☐ Superior ability to train, lead and communicate with employees; motivates employees and sets an excellent example; achieves maximum quality effort from others. |

COMMENTS:

Exh. A, Att. 17
Page 3 of 3



**Ted Stevens**
# Anchorage
## International Airport

Airfield Maintenance
4100 Airfield Drive
Anchorage, AK 99502
Phone (907) 266-2425
Fax (907) 266-2677

February 20, 2001

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, Alaska 99523-1625

RE: Suspension

Dear Ms. Billingham:

On January 23, 2001 it was reported that during a discussion with Foreman Steve Pringle you called him an offensive name and walked out. At the time, Mr. Pringle was attempting to review your performance evaluation with you when you got angry and left.

A meeting was held on February 6th in my office with steward James Dommek as your union representative. You were given an opportunity to explain your actions that day. Your explanation for your behavior was that you were tired, cold and feeling like you were coming down with a cold when Mr. Pringle called you into his office to review your performance evaluation. You said that after you saw the "unacceptable" rating, you got very angry and didn't even finish reading the rest of the evaluation. You admitted to calling Mr. Pringle an offensive name and leaving the building without finishing the review of your evaluation.

After considering the information that was shared at this meeting, I conclude your behavior was unacceptable that Tuesday, January 23rd. You have been disciplined several times in the past seven months. In each instance, the discipline was for essentially the same reason, your blatant disregard and lack of respect for authority. It is only because you apologized to Mr. Pringle and were remorseful at the meeting that you are not being dismissed at this time. Instead, you are being placed on suspension without pay and benefits for twelve (12) working days. Your suspension will begin on Wednesday February 21, 2001 through Thursday March 8, 2001. You will report back to work on Sunday March 11, 2001 at 7:30a.m.

You must be aware that any future occurrences of this nature may be cause for your dismissal. Please take this warning seriously, as this is your last chance to change your behavior and work with your supervisors in a professional manner.

Sincerely,

Daniel A. Hartman
Manager, Airfield Maintenance

EXHIBIT
30
E. Billingham
9-25-07

Cc:     Corky Caldwell
        Janet Rider, HRM
        Anchorage Human Resources Office
        Local 71, Anchorage

Exh. A, Att. 18
Page 1 of 1

0131

MEMO FOR RECORD

Thru: Daniel Hartman
      Manager Airfield Maintenance

February 15, 2002

From: Douglas Hunter
      Assistant Manager

On February 12, 2002 Elsa Billingham got the sanding truck stuck on the bike path just off of Postmark Drive south of the North Terminal. She had a worker come out from the equipment shop to remove the vehicle. She did not call her foreman, Fred Klouda, as she had been briefed on several occasions.

I counseled Elsa on February 13, 2002 on her responsibility to inform her supervisor anytime that she has an incident or accident. She was resistant to these instructions but did understand she must comply with them.

On February 13, 2002 Elsa got the same piece of equipment stuck in the same spot as she had the day before. On this occasion she did the correct thing and called Fred and informed him of the situation. The wrecker was dispatched from equipment shop and removed the vehicle from the snow berm.

Dan Hartman counseled Elsa not to use the small sandtruck and plow on the bike paths anymore because it was to heavy for the pavement it is on.

**Exh. A, Att. 19**
**Page 1 of 1**



EXHIBIT
34
E. Billingham

*Per file*



**Ted Stevens**
# Anchorage
**International Airport**

State of Alaska, Department of Transportation & Public Facilities
Airfield Maintenance
4100 Aircraft Drive
Anchorage, AK 99502

EXHIBIT
36
E. Billingham
9-25-07

July 25, 2002

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, Alaska 99523-1625

RE: Suspension

Dear Ms. Billingham:

Your foreman Mr. Steve Pringle reported that on June 24th and June 26th you failed to follow his orders. On June 24th you were assigned to mow with the Honda rider mower at specified areas around the lake. You failed to do that. The second incident involved watering specific flowerbeds. Steve directed you to water flowerbeds at the South Terminal, North Terminal and two planters located at the end of Postmark Drive. In a two-hour period, you only completed watering one of these beds.

A meeting was held on Monday, July 1st in my office with steward James Dommek as your union representative. You were given an opportunity to explain your actions at that time. You agreed with Steve's version of the events that occurred on June 24th but you said the reason you didn't call Steve about the mower breaking down was because you didn't think the truck's radio was working. You said you went into the office to look for a form to write up the Honda, look for a fuel card and call Steve; that's when Steve showed up at the office. Later in the meeting, you said you ran into Steve in the hallway. When Steve asked what you were doing, you said you were getting a fuel card to mix gas for the trimmer although you were told earlier that day by Steve all the mowing needed to be completed before proceeding to trim. You disregarded his earlier instruction and proceeded to mix gas for the trimmer.

Regarding the June 26th incident you agreed that Steve told you to water specific plant beds with the small water truck. You stated that you misunderstood which planters he wanted you to water. But you decided to water planters that he never told you to water. This resulted in your not completing the assigned task.

After considering the information that was shared at that meeting, I conclude that your behavior was unacceptable both June 24th and June 26th. You have received two other suspensions in the past for the same type of behavior. Because of your failure to accept responsibility and continuing to refuse to comply with your supervisor's instructions, you are suspended without pay and benefits for thirty (30) days. Your suspension will begin August 4, 2002 at 7:30 a.m. and extend through September 3, 2002, 7:30 a.m. You will report back to work on September 4, 2002 at 7:30 a.m.

Exh. A, Att. 20
Page 1 of 2

You must be aware that any future occurrences of this nature may be cause for your dismissal. Please take this warning seriously, as this is your last chance to change your behavior.

Sincerely,

Dan Hartman
Manager, Airfield Maintenance

cc:    Corky Caldwell
       Janet Rider, HRM
       Anchorage Human Resources Office
       Local 71, Anchorage

Exh. A, Att. 20
Page 2 of 2

0130



**Ted Stevens**
# Anchorage
**International Airport**

State of Alaska, Department of Transportation & Public Facilities
Airfield Maintenance
4100 Aircraft Drive
Anchorage, AK 99502

September 26, 2002

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, Alaska 99523-1625

Re: Final Warning & Discipline

Dear Ms. Billingham:

The purpose of this letter is to formally notify you that your misconduct on July 14, 2002 constituted insubordination and warrants discipline.

Specifically, you disobeyed the explicit directive not to operate or drive the flush truck. The directive was perfectly clear. You were to water and handle the hose while Jason Martin was to operate the truck. Your failure and subsequent overt refusal to comply with the order is yet another instance in a long history of insubordination.

Since you only recently returned to work after a 30-day suspension and this act of disobedience took place more than two months ago, I have concluded that another, longer, suspension is deserved and in order, but may not be an effective deterrent this long after the misbehavior.

Your two attempts (July 30th and September 15th) to persuade Mr. Martin to "change his story" concerning the events that took place on July 14th are also considered acts of misconduct worthy of discipline.

Therefore, you are hereby informed and forewarned that another act of insubordination of refusing or failing to obey your supervisors will result in immediate discharge.

You are reminded of your right to dispute this action through the grievance procedure.

Sincerely,

Daniel A. Hartman
Manager, Airfield Maintenance

cc:   Personnel File
      Charlotte Withers, Personnel Officer, DOT&PF
      Public Employees Local #71

EXHIBIT
**37**
E. Billingham   9-25-07

Exh. A, Att. 21
Page 1 of 1
0313



Ted Stevens
# Anchorage
International Airport

P.O. Box 196960
Anchorage, Alaska 99519-6960



May 8, 2003

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, AK 99523-1625

Re: Dismissal from Employment

Dear Ms. Billingham,

The investigation into your recent accident is concluded. On April 16, 2003 while driving pickup #39, you backed it into a stop sign, failed to immediately contact your supervisor, and then continued to drive it to the shop without adjusting the seat and mirrors. The next day, you were placed on administrative leave pending the completion of an investigation.

A pre-disciplinary meeting was held in the presence of your union representatives, Jim Ashton and Billy Meers on Monday, April 21, 2003 regarding this incident. At this meeting you acknowledged backing the truck into the stop sign. You stated you did not adjust either the seat or mirrors when you entered the vehicle even though the other driver before you was taller. You initially told Doug Hunter you could not see out the mirrors, but at the meeting you stated you were able to use the mirrors while driving. You admitted you failed to call your supervisor immediately, as required by policy and also left the scene of the accident before notifying your supervisor and the Airport Police, which is required by policy. When you left the accident site the stop sign was bent at a 45-degree angle posing a hazard to passing traffic. You stated you had been briefed and were aware of both policies, however, you chose not to comply with them.

After considering your poor work history and past disciplinary record, I conclude your behavior on April 16th was unacceptable. You have been disciplined many times in the past. This discipline includes five (5) suspensions of increasing duration, the most recent one less than a year ago lasting thirty (30) days. In addition, your last two performance evaluations documented an overall rating of low acceptable, with your performance being rated as "unacceptable".

As a result of your poor work history, disciplinary record and failure to accept responsibility for your actions, you are dismissed from employment with the State of Alaska, Department of Transportation and Public Facilities. This action is effective immediately. You will receive two weeks severance pay and your insurance will continue to the end of the month.

Exh. A, Att. 22
Page 1 of 2
0891



Ms. Elsa Billingham
Page Two
May 8, 2003


    Please complete the enclosed paperwork and mail to the DOT/PF Personnel Office in Anchorage at P.O. Box 196900 Anchorage, AK 99519-6900 or come by the office at 4111 Aviation Avenue between 8:00 and 4:30. If you have any questions regarding this paperwork, please contact Faye Parker, Human Resource Technician III at 269-0501.


                Sincerely,

                Morton V. Plumb Jr.
                Director


cc:    Janet Rider, HRM
       Central Region Human Resources Office
       Local 71, Anchorage


Note: This letter was never sent because a Letter of Dispute Resolution was signed June 10, 2003 to give MS Billingham another chance.


Exh. A, Att. 22
Page 2 of 2
0892

JUN-17-2003 TUE 04:20 PM DOP LABOR RELATIONS     FAX NO. 9465~~269     P. 03

PUBLIC EMP LOCAL 71     @002

# LETTER OF DISPUTE RESOLUTION
### between the
### STATE OF ALASKA
### and the
### PUBLIC EMPLOYEES LOCAL 71
#### representing the
### LABOR, TRADES AND CRAFTS UNIT

Re: Elsa Billingham

State Case #03-L-304

It is agreed between the parties that the following constitutes full and final resolution of the above referenced dispute for Elsa Billingham, Equipment Operator Sub-Journey II, with the Department of Transportation and Public Facilities.

1) Ms. Billingham will voluntarily demote to a WG58 Laborer, Sub-journey I effective June 11, 2003.
2) Ms. Billingham will be placed on a thirty-day (30) suspension commencing Monday, May 12, 2003 and ending June 10, 2003.
3) During the first year as a WG58, Ms. Billingham will not be upgraded to higher level equipment, nor be entitled to training other than WG58 equipment and safety training.
4) If Elsa's performance does not reach a mid-acceptable level or higher after one year as a WG58, she will be dismissed.
5) This will be Ms. Billingham's last chance to change her behavior. One more act of unacceptable behavior will result in dismissal.

This agreement is entered into solely to address the particular circumstances of this situation and shall not establish any practice or precedent between the parties, nor shall it be referred to in any other matters which may arise between the parties except as may be necessary to implement the terms of this resolution.

FOR THE STATE OF ALASKA:                    FOR PUBLIC EMPLOYEES Local 71

_____                     _____
Art Chance                                  Jim Ashton
Labor Relations Manager                     Assistant Business Manager
Department of Administration                Public Employees. Local 71


17 June 03                                  June 10/03                   Exh. A, Att. 23
Date                                                                     Page 1 of 1
                                            Date

EXHIBIT
43
E. Billingham





EXHIBIT
46
E. Billingham

**MEMORANDUM**

State of Alaska, Department of Transportation & Public Facilities
Anchorage International Airport

To: Memorandum for Record

Date: November 20, 2003

Thru: Daniel Hartman
Manager, Airfield Maintenance

Fax NO: (907) 266-2677
Telephone No: (907) 266-2429

From: Douglas Hunter
Assistant Manager, Airfield Maintenance

Subject: Progress Feedback
10/20/03 – 11/20/03

This assessment is based on direct input from Bruce Jokela who has supervised Ms. Billingham a great deal of the time since her last progress report. Overall Miss Billingham has shown marked improvement in most instances and her work performance has been low acceptable for this period.

**Improved Areas:**
1. Elsa has been ready at the start of the shift with the appropriate personal equipment and clothing.
2. She continues to show eagerness to complete her daily assignments and does so in an acceptable and effective manner.
3. Elsa showed initiative by completing additional work without being instructed to do so during a recent snowstorm.

**Areas for Improvement:**
1. Elsa tends to resist new methods of accomplishing tasks that her supervisor has determined are more productive and efficient.

**Remedy:**
Elsa should willingly accept new methods of accomplishing tasks that may be more efficient and productive. If, after making her best effort, the new method is not as efficient as first thought then she should inform her supervisor.

2. Elsa needs to accept what her supervisor tells her and not go up the management chain unless the incident is unsafe, immoral, or illegal. In this instance Elsa talked with higher supervision about the use of a four-wheeler and plow to clear snow after she had been specifically told by her foreman to use a shovel and not use a four-wheeler. This incident is particularly disturbing since she was counseled on this very subject in her last progress report.

**Remedy:**
Elsa should follow the direction of her immediate supervisor/foreman and not bother other supervisors/managers with minor items that are simply a difference of opinion between herself and a supervisor. The supervisor/foreman has the authority and responsibility to issue instructions that she is to carry out.

Signature constitutes acknowledgement of feedback:

_____              _11-18-03_
Bruce Jokela: WG54, Groundskeeper Supervisor        Date

Exh. A, Att. 24
Page 1 of 1

_____              _____
Elsa Billingham: WG58, Equip. Oper. Sub-Journey I        Date

0177

Elsa was given this feedback, and refused to sign and also requested not to go

*Kevin Dougherty*
ATTORNEY AT LAW
2501 Commercial Drive, Suite 140
Anchorage, Alaska 99501
(907) 276-1640

EXHIBIT
49
E. Billingham
9-25-07

December 6, 2004

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, AK 99523

Dear Ms. Billingham:

As the General Counsel for Local 71, I have been asked to respond to your letter dated November 11, 2004.

Please note that my letter dated September 21, 2004 reviewed the Employer's just cause for the dismissal based on the 1) **six previous disciplinary suspensions** which led to the Last Chance Agreement, 2) failure to reach a mid-acceptable level in the State evaluations based on the **"5 months of unacceptable and 3 months at low-acceptable"** evaluations.[1]

**Exh. A, Att. 25**
**Page 1 of 2**

---

[1] The Last Chance Agreement permits dismissal for either a) failing to reach a "mid-acceptable evaluation" or b) "one more act of unacceptable behavior". Here, Ms. Billingham's substandard evaluations were too numerous and severe to provide any reasonable basis to challenge the Employer's dismissal. Several of these evaluations were not disputed.

EB 0247

Ms. Elsa Billingham
Page 2

Here the Union thoroughly reviewed your case file, including interviewing co-workers and superiors.   Given the clear findings that the Employer had reasonable grounds to terminate Local 71 properly determined that the grievance lacked sufficient merits to proceed to arbitration.

Finally to answer your additional questions:

- The Alaska Supreme Court <u>Kollodge v. State</u> 757 P2d at 1034 decision recognizes the union's discretion not to arbitrate grievances with weak merits.

- A.S. 23.40.210 provides for an arbitration process but does not dictate which cases should be arbitrated.  See <u>Kollodge v. State</u> cited above.

- Regarding your due process question, please note that the Employer <u>did</u> hold a Pre-Termination hearing.  This meeting was held prior to your termination in June 2004 with DOT Superintendent Dan Hartman and your DOT Supervisors along with Local 71's Dale Johnson and Elsa Billingham.

As the attorney for Local 71, I cannot offer you legal advice.  Therefore, I suggest your consult an attorney if you need legal advice.

Sincerely,

Kevin Dougherty

KD th
120504 ElsaBillingham

cc: Dale Johnson

**Exh. A, Att. 25**
**Page 2 of 2**

**EB 0248**

DECEMBER **9** THURSDAY

cold overcast

2004   344th day – 22 days follow

Today I picked up my mail I had a Christmas present from my mom. I recieved a nasty letter from Dougerty. reciting all of my suspensions Bla Bla.

EB 1998

EXHIBIT
50
E. Billingham
9-25-07
PENGAD 800-631-6989

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|
| ☐ FEPA | 706 |
| ☒ EEOC | 380-2004-03898 |

Alaska State Commission For Human Rights    and EEOC
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Ms. Elsa Billingham** | **(907) 332-3791** | 11-28-1949 |

Street Address    City, State and ZIP Code

**P O Box 231625 Anchorage, AK 99523**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ALASKA STATE TRANSPORTATION DEPT** | **500 or More** | **(907) 266-2429** |

Street Address    City, State and ZIP Code

**4100 Aircraft Drive,  Anchorage, AK 99517**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| *PUBLIC EMPLOYEES LOCAL 71* | | 266-242<br>266-242<br>*(907) 276-72...* |

Street Address    City, State and ZIP Code

*2510 ARCTIC BLVD ANC AK 99503 -2516*

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|---|---|---|
| ☒ RETALIATION | ☒ AGE | | | | Earliest / Latest |
| | | ☐ DISABILITY | ☒ OTHER (Specify below.) | | **06-28-2004**    **06-28-2004** |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):   *HARASSMENT*   ☒ CONTINUING ACTION

I filed charge 380-2004-00472 with the EEOC, which closed this case with a dismissal in July 2004. I believe that because of my sex, Female, and then age, 54, and in retaliation for filing this EEOC Charge, the employer terminated my employment on June 28, 2004.

I believe that the employer's action is in violation of Title VII of the 1964 Civil Rights Act, as amended.

*I have been blacklisted by the Dept of Transportation and Public Employees Local 71. So I can no longer work for the Dept of Transportation. I have not been allowed a hearing where I could present my case and witnesses.*

Exh. A, Att. 27
Page 1 of 1

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **DEC 30 2004**   *E Billingham*<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br>**DEC 30 2004** |

My Commission Expires
September 12, 2007

0526

EXHIBIT
58
E. Billingham
9-5-07
PENGAD 800-631-6989

August 28, 2004

Elsa Billingham
8113 E. 3rd Ave.
Anchorage, AK 99504

RE:    Termination of Non-Permanent Position

Dear Ms Billingham:

I am writing to notify you that your services will no longer be needed as a non-permanent, Engineering Technician WG59 at the TSAIA Project Office.

You will be compensated through your last day of work August 28, 2004. Please complete the enclosed paperwork as soon as possible and submit them to the Human Resources Office at 4111 Aviation Drive in Anchorage. If you have any questions regarding this paperwork please contact Faye Parker at 269-0501.

Sincerely,

Joe Owens
Project Engineer

cc:    Technical Services, Anchorage/DOT
       Management Services, Anchorage



Exh. A, Att. 28
Page 1 of 1

0093