

**Ted Stevens**
**Anchorage**
International Airport

# MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities

**TO: Memorandum for Record**

**DATE:** July 1, 2003

**THRU:** Daniel Hartman
Manager, Airfield Maintenance

**FAX NO:** (907) 266-2677
**TELEPHONE NO:** (907) 266-2429

**FROM:** Douglas Hunter
Assistant Manager, Airfield Maintenance

**SUBJECT:** Progress Feedback
06/11/03 - 06/30/03

This assessment is based on direct input from Bruce Jokela who has supervised Ms. Billingham since her return.

Overall work performance has been low acceptable:
- Displays eager and willing attitude to start work.
- Ms. Billingham is diligent once work starts
- Needs only slight supervision on procedures to follow

Areas for improvement include the following:
- When mowing/trimming in with fellow workers in a group, Ms. Billingham will unnecessarily go to an area that has already been cut or trimmed.
- When using hand tools, she has a tendency to use more force than needed, causing breakage/unneeded wear and tear on equipment.
- Although eager to work, Ms. Billingham fails to look at the "Big Picture" and feels some specified work is not needed, i.e., picking rocks, trash, debris from landscape areas.
- Has difficulty getting along with coworkers. Example: experiences conflicts over small matters, i.e. wash bays.

Signature constitutes acknowledgement of feedback:

_____     7-01-03
Bruce Jokela: WG54, Groundskeeper Supervisor          Date

_____     7/1/03
Elsa Billingham: WG58, Equip. Oper. Sub-Journey I      Date

Remarks:

I don't feel that I unnecessarily go to
where an area that has already been trimmed.
I had never used a weeding fork before it
was the first time I had used one and I
learned how to use it.
I will do any job Bruce wants me
to do it doesn't matter what the job is
I try to get along with everyone.


**Ted Stevens**
**Anchorage**
**International Airport**

MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities
Anchorage International Airport

To:  **Memorandum for Record**

Thru:  Daniel Hartman
Manager, Airfield Maintenance

From:  Douglas Hunter
Assistant Manager, Airfield Maintenance

Date: July 16, 2003

Fax NO:  (907) 266-2677
Telephone No:  (907) 266-2429

Subject:  Progress Feedback
7/01/03 – 7/15/03

This assessment is based on direct input from Bruce Jokela who has supervised Ms. Billingham since her return.
Overall work performance has been unacceptable.

**Unacceptable Behavior:**
1.  She failed to follow Airfield Maintenance policy for vehicle inspection prior to operation on July 2, 2003.
2.  She displayed poor judgement in moving a mower and damaged an irrigation line on July 3, 2003.

**Remedy:**
She must follow all directives and policies of the State and Federal governments as well as policies and directives of the FAA, TSAIA, and Airfield Maintenance without fail. She must also exercise better judgement choosing where she operates equipment in order to avoid damaging valuable assets.

**Areas for Improvement:**
1.  She complained directly to the Airfield Maintenance Manager without going through her supervisor. She complained that the work she had been assigned was too hard and she needed help. Others wage grade 58 employees were doing the same job without complaint. (July 11, 2003)
2.  She did not follow instructions on placement of irrigation lines and then when questioned failed to admit her mistake. Additionally, Elsa didn't think she should have to correct her mistake. (July 8, 2003) She did admit her mistake the following day.
3.  She asked to do a special detail, Green Star, after being assigned other work on July 1, 2003.

**Remedy:**
In order to improve these areas Elsa needs to first pay attention to instructions she is given then follow those instructions. Additionally, once given instructions, she should not ask to complete other projects without first finishing the task she has been given. If she makes a mistake she should admit it immediately and then take steps to correct the mistake. Finally, if she has a problem or concern about an assignment she should bring those concerns to the attention of her immediate supervisor before going to a foreman or manager.

**Improved Areas:**
1.  She has shown a willingness to accept work assignments.
2.  Elsa has shown improvement in getting along with others.

Signature constitutes acknowledgement of feedback:

_____
.uce Jokela: WG54, Groundskeeper Supervisor

_____
Elsa Billingham: WG58, Equip. Oper. Sub-Journey I

7-17-03
Date

7/17/03
Date

Hartman Aff., Exh. A
Page 2 of 6

0832

Exh. G, Att. 1
Page 2 of 6



**Ted Stevens
Anchorage
International Airport**

## MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To: Memorandum for Record**

**Date:** August 15, 2003

**Thru:** Daniel Hartman
Manager, Airfield Maintenance

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**From:** Douglas Hunter
Assistant Manager, Airfield Maintenance

**Subject:** Progress Feedback
7/17/03 – 8/15/03

This assessment is based on direct input from Bruce Jokela who supervises Ms. Billingham. Ms. Billingham has been performing as she has in the past. She has acceptable performance in some very specific areas but her overall performance continues to be unacceptable.

**Continued Acceptable Behavior:**
1. Accepts work assignments well.
2. Uses reasonable judgement to perform duties.
3. Asks for clarification if unsure of directions.

**Unacceptable Behavior:**
1. Unauthorized use of leave.
2. Wastes time looking for favorite tools, equipment, or vehicle.
3. Waiting in the vehicle while others are cleaning up, finishing work or putting away equipment.

**Remedy:**
1. She must follow policy on the use of leave. She was specifically briefed on the policy and given the required telephone number the day before.
2. She must use the tools that are available and not waste time looking for and tying up the radio in an effort to find her favorite equipment or tool. If equipment or a tool is available that will fill the requirement use it!
3. She must fully participate in all aspects of the job that she is given including finish work, cleanup and equipment storage.

**Areas for Improvement:**
1. Seems to take more time than required to get started (work detail, vehicle checks).
2. Makes negative comments to others on how hard the work is that she has done.

**Remedy:**
1. She must start her assigned jobs immediately. She should be prepared to go to work when she punches in.
2. A more positive attitude and the realization that everyone is working hard might reduce her negative comments.

Signature constitutes acknowledgement of feedback:

Bruce Jokela: WG54, Groundskeeper Supervisor

Elsa Billingham: WG58, Equip. Oper. Sub-Journey I

8-15-03
Date

8/15/03
Date

**Hartman Aff., Exh. A
Page 3 of 6**

**0831
Exh. G, Att. 1
Page 3 of 6**




**Ted Stevens**
# Anchorage
**International Airport**

## MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To:** Memorandum for Record

**Thru:** Daniel Hartman
Manager, Airfield Maintenance

**From:** Douglas Hunter
Assistant Manager, Airfield Maintenance

**Date:** October 21, 2003

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**Subject:** Progress Feedback
8/16/03 – 10/20/03

An assessment was not accomplished in September due to the lack of observation. During that time Elsa was on annual leave for three weeks while Bruce Jokela was on leave for approximately two weeks. Additionally Elsa did not work exclusively for Bruce during this period. This assessment is based on direct input from Bruce Jokela and Fred Klouda who supervised her during this time.

Her performance has been "mid-acceptable" this period.

Elsa has shown marked improvement since her last progress assessment. She needs to continue her improvement in order to achieve the level of performance that will earn her a "mid-acceptable" rating on her one-year evaluation and successfully complete the terms of her final letter of warning.

**Improved Areas:**
1. Worked diligently and followed instructions in most instances.
2. Her attitude remains good and she works hard when she gets to the site.
3. Elsa worked hard preparing for the annual FAA 139 inspections and contributed to the excellent result.

**Areas for Improvement:**
1. Elsa needs to accept what her supervisor tells her and not go up the management chain unless the incident is unsafe, immoral, or illegal. In this instance Elsa asked to have a curb and gutter broom sweep in a parking lot. She was told "no" by her immediate supervisor. Elsa then went to the foreman and asked the same question and again, she was told "no." Once again Elsa went up the chain to the Airfield Maintenance Manager and asked Dan Hartman the same question. Once more she was told "no." This course of action is a waste of time and not called for in instances such as this. She should follow the direction of her immediate supervisor.
2. Elsa is still slow in getting to the work site and needs to make a concerted effort to arrive at the same time as the rest of the crew.

Signature constitutes acknowledgement of feedback:

Bruce Jokela: WG54, Groundskeeper Supervisor

*Oct-21-03*
Date

Elsa Billingham: WG58, Equip. Oper. Sub-Journey I

*10/21/03*
Date

*under duress*

Hartman Aff., Exh. A
Page 4 of 6

0830
Exh. G, Att. 1
Page 4 of 6



**Ted Stevens**
# Anchorage
**International Airport**

MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities
Anchorage International Airport

To:    **Memorandum for Record**                                    Date: November 20, 2003

Thru:    Daniel Hartman
         Manager, Airfield Maintenance                    Fax NO: (907) 266-2677
                                                          Telephone No: (907) 266-2429

From:    Douglas Hunter                          Subject: Progress Feedback
         Assistant Manager, Airfield Maintenance           10/20/03 – 11/20/03

This assessment is based on direct input from Bruce Jokela who has supervised Ms. Billingham a great deal of the time since her last progress report. Overall Miss Billingham has shown marked improvement in most instances and her work performance has been low acceptable for this period.

**Improved Areas:**
1. Elsa has been ready at the start of the shift with the appropriate personal equipment and clothing.
2. She continues to show eagerness to complete her daily assignments and does so in an acceptable and effective manner.
3. Elsa showed initiative by completing additional work without being instructed to do so during a recent snowstorm.

**Areas for Improvement:**
1. Elsa tends to resist new methods of accomplishing tasks that her supervisor has determined are more productive and efficient.

**Remedy:**
Elsa should willingly accept new methods of accomplishing tasks that may be more efficient and productive. If, after making her best effort, the new method is not as efficient as first thought then she should inform her supervisor.

2. Elsa needs to accept what her supervisor tells her and not go up the management chain unless the incident is unsafe, immoral, or illegal. In this instance Elsa talked with higher supervision about the use of a four-wheeler and plow to clear snow after she had been specifically told by her foreman to use a shovel and not use a four-wheeler. This incident is particularly disturbing since she was counseled on this very subject in her last progress report.

**Remedy:**
Elsa should follow the direction of her immediate supervisor/foreman and not bother other supervisors/managers with minor items that are simply a difference of opinion between herself and a supervisor. The supervisor/foreman has the authority and responsibility to issue instructions that she is to carry out.

Signature constitutes acknowledgement of feedback:

Bruce Jokela: WG54, Groundskeeper Supervisor            _11-18-03_                **Hartman Aff., Exh. A**
                                                          Date                       **Page 5 of 6**

Elsa Billingham: WG58, Equip. Oper. Sub-Journey I        _____              **0828**
                                                          Date                    **Exh. G, Att. 1**
                                                                                  **Page 5 of 6.**
ELSA was given this feedback, and refused to sign and also requested NOT to get
these any more.  _Douglas [signature]_  11-18-03

**Ted Stevens Anchorage International Airport**

# MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities

| | | |
|---|---|---|
| **To: MEMO FOR RECORD** | **Date:** | November 18, 2003 |
| | **Telephone:** | 266-2427 |
| **From:** Daniel Hartman<br>Manager, Airfield Maintenance | **Subject:** | Billingham Progress Report<br>November 03 |

The Letter of Agreement between the State and Local 71 dated 10 June 2003 concerning Elsa Billingham's last chance stated that Elsa's performance needed to reach a "mid acceptable" or higher after one year or she would be terminated. I directed Doug Hunter to provide Elsa with feedback each month on her performance. She would be told if she were progressing as well as areas she still needed to improve if she were to reach a "mid acceptable" performance level.

Elsa has been provided this feedback for the past five months. During this time she has made some improvement in her performance but has made little or no improvement in her ability to follow her supervisor's instructions. Several times during these feedback sessions she has been argumentative with those providing the feedback. She has even argued about things when she was told she did a good job or improved in an area. During these feedback sessions she has been told several times that she needs to follow her supervisor's directions and that she is not to circumvent her supervisor and go to another supervisor when she did not get to do what she wanted.

During the feedback session on November 18th, Elsa started to argue again with her supervisor. She asked if anyone else was getting feedback sessions as she was. I said, "No" and explained that her feedback was designed to help her understand what was expected of her and what she needed to improve to thereby improve her job performance to "mid acceptable". She said that she did not want to get the feedback anymore and didn't want to be informed as to what she needed to improve.

I again explained to her that we were not required to take the time to try to inform her what she needed to improve and the feedback was for her benefit. I explained that if she did not improve her performance she would be terminated. She again stated that she did not want to receive the feedback anymore. I said, "OK" and informed Elsa that her supervisor would continue to document her day-to-day progress but *at her request* she would not be provided that information.

I instructed Doug Hunter and Bruce Jokela to continue to document her performance and put it into her supervisor's records.

Doug Hunter, Bruce Jokela and myself were all present when she insisted that she not be given any more feedback.

**Hartman Aff., Exh. A**
**Page 6 of 6**
**0829**
**Exh. G, Att. 1**
**Page 6 of 6**



**Ted Stevens**
# Anchorage
International Airport

### MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To: Memorandum for Record**

**Thru:** Daniel Hartman
Manager, Airfield Maintenance

**From:** Douglas Hunter
Assistant Manager, Airfield Maintenance

**Date:** January 12, 2004

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**Subject:** Statement of Progress
11/20/03 – 12/20/03

This assessment is based on direct input from Bruce Jokela and Fred Klouda who supervised her during this time as well as personal observation. Since the last reporting period, Ms. Billingham has not improved beyond that which had been previously noted and has reverted back to some unacceptable practices.

**Acceptable Behavior:** Elsa continues to show enthusiasm when given her daily work assignments, although she has no trouble in voicing her opinion/objection if said work assignment doesn't involve the use of a 4-wheeler.

**Areas for Improvement:**
1. Ms. Billingham must be more attentive when being given instructions on tasks that are not her routine activities.
2. She fails to follow directions as given, making it much harder to perform needed preventive maintenance as required.

**Unacceptable Behavior:**
1. Elsa has gone beyond her direct supervisor to request the purchase of hand tools because she couldn't find any. Her supervisor looked in the tool storage areas and he was able to find nine of the requested tools stored in the proper area.
2. She has failed to perform complete vehicle inspections. She had a brake light out, was informed of needed repair, denied it needed repair, and did not report to the maintenance shop as directed to until later in the day. At that time she did acknowledge that there was a needed repair.

Her performance has been "Unacceptable" this period.

Ms. Billingham must improve her ability to follow directions, whether it is from her supervisor or airfield maintenance policy to achieve the level of performance that will earn her a "mid-acceptable" rating on her one-year evaluation and successfully complete the terms of her final letter of warning.

Signature constitutes acknowledgement of input:

_____
Bruce Jokela: WG54, Groundskeeper Supervisor

_____
Fred Klouda: WG49, International Airport Foreman

_1-20-04_
Date

_1/13/04_
Date

**Hartman Aff., Exh. B**
**Page 1 of 6**

0827

**Exh. G. Att. 2**
**Page 1 of 6**



**Ted Stevens**
# Anchorage
**International Airport**

## MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To: Memorandum for Record**

**Thru:** Daniel Hartman
Manager, Airfield Maintenance

**From:** Douglas Hunter
Assistant Manager, Airfield Maintenance

**Date:** January 26, 2004

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**Subject:** Statement of Progress
12/20/03 – 1/20/04

This assessment is based on direct input from Bruce Jokela and Fred Klouda who supervised her during this time as well as personal observation. Since the last reporting period, Ms. Billingham has maintained the duty performance from her last report and not improved in following directions. Ms. Billingham has not had an unacceptable incident in the time since her last progress report.

**Acceptable Behavior:**
Elsa continues to show enthusiasm when given her daily work assignments.

**Areas for Improvement:**
Ms. Billingham must listen more closely so that she can apply verbal instructions when performing tasks. She should formulate and ask questions that will help her expedite task prioritization and completion rather than voicing her opinion/objection about the instructions or work assignments.

Elsa must stop continually asking to operate pieces of equipment that are not necessary to do the job she is assigned. This is an on-going problem that has not improved even after verbal and written counseling.

Her performance has been "Low Acceptable" this period.

Ms. Billingham must improve her ability to follow directions to achieve the level of performance that will earn her a "mid-acceptable" rating on her one-year evaluation and successfully complete the terms of her final letter of warning.

Signature constitutes acknowledgement of input:

Bruce Jokela: WG54, Groundskeeper Supervisor

Fred Klouda: WG49, International Airport Foreman

1. 30. 04
Date

1/27/04
Date





**Ted Stevens**
# Anchorage
**International Airport**

## MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To: Memorandum for Record**

**Date:** March 17, 2004

**From:** Daniel Hartman
Manager, Airfield Maintenance

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**Subject:** Statement of Progress
1/21/04 – 2/20/04

This assessment is written with direct input from Bruce Jokela and Dale Fairclough who supervised her during this time. Mr. Fairclough supervises her on Wednesday and Thursday when Bruce is off. Since the last reporting period, Ms. Billingham has made no progress and instead has declined in her duty performance. She has had several instances of unacceptable behavior.

**Acceptable Behavior:**
Elsa continues to show enthusiasm when given her daily work assignments.

**Areas for Improvement:**
Elsa has difficulty listening to and following instructions.
    Ms. Billingham became puzzled and had to think about what parts of her work were complete when questioned to determine if all parts of the job that she had been instructed to perform were completed.

**Unacceptable Behavior:**
There have been several instances when Elsa has been given work assignments and failed to complete them.
    On several occasions, Elsa had to be sent back to job to finish what she was instructed to do.
    In one instance, Elsa was so preoccupied with getting trained on other tasks that she neglected to complete her task. During a follow-up evaluation, Mr. Jokela found the job was not done. When he asked her why all parts of the task had not been accomplished, she replied "well I did it last week".
    On two other occasions, Ms. Billingham said her work was done only to find out that a list of required items for task completion had not been accomplished.

Elsa failed to work on assigned tasks until the appropriate time for breaks, lunch and shift changes.
    On numerous occasions Elsa returned to the break room earlier than reasonable, starting breaks or lunches 10-15 minutes early. On one occasion when she was questioned about this practice, her reply was "Well, by my clock it is break time". When asked if she was going to end her break by her time or state time, she replied "state time".

Elsa Billingham's performance has been "Unacceptable" this period.

Ms. Billingham must complete assigned tasks without constant follow-up and further instructions. She must also work until designated times and not stop early for breaks and shift changes. Ms. Billingham must show considerable improvement to achieve the level of performance that will earn her a "mid-acceptable" rating. I am also concerned that when all her progress reports are evaluated she cannot attain a "mid-acceptable" rating for her one-year evaluation.

Signature constitutes acknowledgement of input:

_____        4-30.04
Bruce Jokela: WG54, Groundskeeper Supervisor        Date

_____        4-2-04
Dale Fairclough: WG49, International Airport Foreman        Date

**Hartman Aff., Exh. B**
**Page 3 of 6**

0825
**Exh. G. Att. 2**
**Page 3 of 6**



**Ted Stevens**
# Anchorage
**International Airport**

## MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To:** Memorandum for Record

**From:** Daniel Hartman
Manager, Airfield Maintenance

**Date:** April 22, 2004

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**Subject:** Statement of Progress
2/21/04 – 4/20/04

This assessment is written with direct input from Bruce Jokela and Dale Fairclough who supervised her during this time. Mr. Fairclough supervises her on Wednesday and Thursday when Bruce is off. Additionally, Mr. Fairclough supervised Elsa for the time Bruce was on annual leave from 3/09/04 – 3/26/04. Since the last reporting period, Ms. Billingham seems to have made progress in her duty performance and ability to follow instructions.

**Acceptable Behavior:**
Elsa continues to show enthusiasm when given her daily assignments and was capable of performing all the tasks assigned.
She readily accepted work assignments and displayed improved moral towards her job. She has accepted duties assigned to her and has volunteered to do other jobs, such as clean the bathroom at the Q.T.F. and pick up trash along the roadways.
She has made improvements in her ability to follow directions.
She has requested and was given a variety of assignments, which she was given. She was assigned to install all the weight restriction signs and to use the 2 inch pumps for flood control. She performed adequately on both duties.
She used no sick leave for this monthly period.

Ms. Billingham has shown much improvement in her attitude and performance during this period. Ms. Billingham achieved a "mid-acceptable" rating during this period for the first time since her final letter of warning. I am still concerned that when all her progress reports are evaluated she will not attain a "mid-acceptable" rating for her one-year evaluation.

Signature constitutes acknowledgement of input:

_Bruce Jokela:_ WG54, Groundskeeper Supervisor

4-28. 04
Date

**Exh. G. Att. 2**
**Page 4 of 6**

**Hartman Aff., Exh. B**
**Page 4 of 6**

0823

_Dale C Fairclough_                          4-28-04
Dale Fairclough: WG49, International Airport Foreman          Date

Hartman Aff., Exh. B
Page 5 of 6

0824
Exh. G. Att. 2
Page 5 of 6



**Ted Stevens Anchorage International Airport**

### MEMORANDUM
State of Alaska, Department of Transportation & Public Facilities Anchorage International Airport

**To:** Memorandum for Record

**From:** Daniel Hartman
Manager, Airfield Maintenance

**Date:** June 5, 2004

**Fax:** (907) 266-2677
**Telephone:** (907) 266-2429

**Subject:** Statement of Progress
4/21/04 – 5/31/04

This assessment is written with direct input from Bruce Jokela, Dale Fairclough, and Fred Klouda who supervised her during this time. During the month of May 2004, Elsa was assigned to work for Bruce Jokela on the landscaping crew on six different occasions. During those times Elsa did what she was told to do for the most part and performed her duties to the set standard. However, there were occasions when she exhibited the same pattern of behavior that has resulted She was switched to working with Fred and her overall attitude has improved since then.

**Acceptable Behavior:**
Elsa continues to show enthusiasm when given her daily assignments

**Unacceptable Behavior:**
Elsa was instructed not to use a push mower without the grass catcher in place. During a progress check it was identified that she had taken it upon herself to not follow a safety procedure, and was operating the mower without the catcher in place and the discharge chute open. When the discharge chute is open and without a bag in place all of the clippings and potentially dangerous objects are thrown directly at the operator. The work was stopped immediately and the safety hazard corrected by Mr. Jokela. As the day progressed, Elsa was observed using the mower correctly. In the afternoon, Elsa had again removed the bag from the mower. Mr. Jokela stopped her for a second time and asked her why she had removed the bag. Elsa replied that the grass was too thick and she had to continually keep emptying bag. Mr. Jokela had to then instruct her to turn the mower off and put it away.

On other occasions when she was mowing, she went into areas that have been already been done and start to mow them again. Her reasoning that she gave when asked was that "they didn't look good enough." Although her intention was good, it was not what she had been instructed, and it wasted time which caused the rest of the crew to work even harder to keep up with the mowing schedule.

Ms. Billingham has at times during this period shown the same type of behavior that resulted in her receiving her final letter of warning. She did not follow specific directions on several occasions. In at least two of those occasions she created a safety hazard for herself and the travelling public. Ms. Billingham achieved an "unacceptable" rating during this period.

Signature constitutes acknowledgement of input:

_Bruce Jokela_                                  6-10-04
Bruce Jokela: WG54, Groundskeeper Supervisor        Date

_Dale Fairclough_                               6-29-04
Dale Fairclough, WG49, International Airport Foreman    Date

_Fred Klouda_                    See Back    6/10/04
Fred Klouda: WG49, International Airport Foreman        Date

**Hartman Aff., Exh. B**
**Page 6 of 6**

**0822**

**Exh. G. Att. 2**
**Page 6 of 6**



**Ted Stevens**
# Anchorage
International Airport

P.O. Box 196360
Anchorage, Alaska 99519-6900

June 28, 2004

Ms. Elsa Billingham
P.O. Box 231625
Anchorage, AK 99523-1625

RE: Dismissal from Employment

Dear Ms. Billingham,

On June 10, 2003 your union proposed and entered a Letter of Dispute Resolution (LDR) regarding your employment at the Ted Stevens Anchorage International Airport. The LDR agreed that you would; 1) voluntarily demote to a WG58 Laborer, sub-journey I; 2) be placed on a thirty-day suspension; 3) not be upgraded to higher level equipment nor be entitled to training for one year; and 4) reach a mid-acceptable level of performance after one year as a WG58 or be dismissed from employment. This LDR was a last chance opportunity for you to change your work behavior and improve your job performance.

During the past year you were provided reports to assist you in recognizing your progresses and areas that continued to need improvement. During the November, 2003 review you refused to accept any future progress reports or to participate in any future review sessions. Out of ten progress reports, you achieved a mid-acceptable level of performance on only two of them. The remainder were either rated as low acceptable or unacceptable. As a result, your performance over the past year is rated as low acceptable. This does not achieve the standard of performance that was established by the LDR.

At a meeting held with you, your union representatives, Dan Hartman and Charlotte Withers-Mushat on June 9, 2004, you continued to deny any accountability for your unacceptable job performance.

Effective immediately, you are dismissed from employment with the State of Alaska, Department of Transportation for failure to meet the full conditions of the Letter of Dispute Resolution. You will receive two weeks severance pay and your group health insurance will continue to the end of the month or as established by your union health trust.

**Hartman Aff., Exh. C**
**Page 1 of 2**

0097 **Exh. G. Att. 3**
**Page 1 of 2**

Please complete the enclosed paperwork and mail to Technical Services, DOT/PF at P.O. Box 196900, Anchorage 99519-6900 or visit the office at 4111 Aviation Avenue between 8:00 am to 4:30 pm. If you have any questions regarding the paperwork or your final pay, please contact Faye Parker, Human Resource Technician at 269-0501.

Sincerely,

Morton V. Plumb Jr.
Director

cc:     Management Services, DOT
        Technical Services, DOT
        Local 71, Anchorage

**Hartman Aff., Exh. C**
**Page 2 of 2**

**0098**
**Exh. G. Att. 3**
**Page 2 of 2**

NOV-29-2005 TUE 11:07 AM DOP MANAGEMENT SERVICES    FAX NO. 1 907 269 8910    P. 02
NOV-29-2005 TUE 11:00 AM labor relations    FAX NO. 9074652269    P. 02
NOV-23-2005 WED 11:23 AM DOP MANAGEMENT SERVICES    Airfield Maintenanc    907-266-2677
    FAX NO. 1 907 289 8910    P. 02    1/1
    P. 02

LETTER OF DISPUTE RESOLUTION
between the
STATE OF ALASKA
and the
PUBLIC EMPLOYEES LOCAL 71
representing the
LABOR, TRADES AND CRAFTS UNIT

Re: 
LDR 06-L-146

It is agreed and understood between the parties that the following terms and conditions constitute a "last chance" employment agreement for _____ Maintenance Specialist Electrician, Journey II with the Department of Transportation, Airfield Maintenance, Ted Stevens International Airport. No provisions of the 2004-2005 master agreement not specifically referenced herein are modified by this agreement.

- Mr. _____ will voluntarily demote to a WG60 Environmental Service Sub-Journey 1 effective on November 28, 2005 at the current duty station.

- Wage provisions of Article 13.0.1 (B) will apply to determine wage-step placement upon demotion, and Article 13.07 (B) will apply to provide a new probationary period at the lower classification upon demotion.

- Current duty station seniority will be retained upon demotion and will continue to accrue in the lower job classification. Article 22.04 (C) – two-year retention of duty station seniority at the higher job classification – will not apply under terms of this agreement.

- The "last chance" conditions of this agreement require Mr. _____ to comply with all lawful work instructions and directives. There can be no incidents of unacceptable job behaviors including insubordination, dishonesty or failure to comply with work protocols, safety and security standards or other required job performance standards and expectations. Failure to meet this condition will result in dismissal from employment.

This agreement is entered into solely to address the unique and specific circumstances of this particular situation. It does not establish any practice or precedent between the parties. This agreement shall not be referred to in any other dispute, grievance, arbitration, hearing, or any other forum, except as may be necessary for the execution of its terms.

FOR THE STATE OF ALASKA:

FOR PUBLIC EMPLOYEES Local 71:

_____    _____  11/28/05
Art Chance, Director    Jim Ashton
Labor Relations    Business Manager

29 Nov 05    11-23-05  3:51 PM
Date    Date

    _____
    Employee

2682

Hartman Aff., Exh. D
Page 1 of 8

Exh. G. Att. 4
Page 1 of 8



**Ted Stevens**
# Anchorage
### International Airport

PO Box 199567
Anchorage, Alaska 99519-6560

April 24, 2006

Mr.

Anchorage, AK 99507

Mr.

After careful consideration and review, the department has determined that you have not satisfactorily complied with the employment conditions that were required to complete your probationary period as a custodian (WG 60) with Airfield Maintenance, Ted Stevens International Airport. As a result, your employment is terminated effective at close of business today, April 24, 2006.

In November 2005, a 'last chance' employment agreement was proposed by your union and agreed to by airport management. Substantively, the agreement permitted you to demote to a different job class in probationary status and stipulated the need for you to remain in compliance with all performance expectations, work instructions, directives, protocols and safety and security standards. Moreover, there could be no incidents of unacceptable job behaviors during the probationary period.

On April 20 Charlotte Mushat (HR Consultant) and I met with you and your union representative, Dale Johnson, to discuss ongoing concerns for your poor job performance, low productivity and argumentative workplace behavior. We discussed the many instances when you failed to work in compliance with the 'last chance' employment conditions and the additional opportunities we provided to demonstrate that you could meet those conditions. You denied the incidents and the concerns that were expressed, which is a continuation of a persistent unwillingness to be accountable for your performance. The facts have served to conclude that you cannot deliver the consistent scope or character of work performance that is necessary to succeed in your position. It is for this reason that your probationary employment is terminated.

All state property in your possession must be surrendered to me, including building keys and identification cards. Enclosed is the paperwork all state employees receive at the close out their employment. Please complete and submit the documents to the Technical Services (Payroll) Section at 4111 Aviation Avenue. If you have any questions regarding completion of the documents, you should contact payroll supervisor, Faye Parker at 269-0501.

Dan Hartman
Airfield Maintenance Manager

**2685**

Enclosures
cc:  Dale Johnson, LTC Local 71
     Charlotte Mushat, Management Consultant, DOA/DOP
     Technical Services, Anchorage

**Hartman Aff., Exh. D**
**Page 2 of 8**

**Exh. G. Att. 4**
**Page 2 of 8**

APR-09-2008 SUN 09:08 AM DO_ MGMT SERVICES          FAX NO. 74654732          P. 02
APR-08-2008 SAT 12:25 PM labor relations            FAX NO. 9074862268         P. 02/02
04/07/2008 12:10 FAX 807 279 7171   PUBLIC EMP LOCAL 71   → LABOR RELATIONS   ☎001

LETTER OF DISPUTE RESOLUTION
between the
STATE OF ALASKA
and the
PUBLIC EMPLOYEES LOCAL 71
representing the
LABOR, TRADES AND CRAFTS UNIT

Re:
Airfield Maintenance, Ted Stevens International Airport
LDR: 06-L-232

It is agreed and understood between the parties that the following constitutes full and final resolution of the above referenced dispute pertaining t.
Equipment Operator Journey II, with the Department of Transportation and Public Facilities, Anchorage Airfield Maintenance.

1) Mr. _____'s two-week disciplinary suspension without pay will be reduced to one week to begin April 2, 2006 and ending at close of business on April 9, 2006.
2) There can be no like or similar accident or occurrence that, in the judgment of the employer, could have been reasonably prevented by Mr. _____ through appropriate operator attention or effective operator intelligence.
3) This constitutes what is the last chance for Mr. _____ to demonstrate he can maintain regularly effective, accountable and safe operator behavior and can work in compliance with accepted operating protocols, policies and procedures.
4) Failure by Mr. _____ to consistently meet all the terms and conditions established herein will result in his dismissal from employment.

This resolution is entered into solely to address the specific circumstances of this particular situation. It does not establish any practice or precedent between the parties.

FOR THE STATE OF ALASKA:            FOR PUBLIC EMPLOYEES Local 71:

_____            _____
Art Chance, Director                Jim Ashton
Labor Relations                     Business Manager

_____            _____
Date                                Date
7 Apr 06                            04/07/06

2683



**Ted Stevens
Anchorage
International Airport**

# MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities

**To:**    Memo For Record

**Date:**    February 9, 2007

**Thru:**    Dan Hartman
Manager
Airfield Maintenance

**Telephone:**    266-2427

**From:**    Dan Frisby
Assistant Manager
Airfield Maintenance

**Subject:**    Case 590/Parking
Garage Sump Pump

**Overview:** On January 17, 2007 at 9:43 am the Backhoe was traveling north against traffic on the road at the East end of the parking garage. The operator of the Backhoe kept to the east to avoid oncoming traffic and struck an electrical box that was mounted to the west side of the sump pump housing. The box was torn loose from the housing and hanging by the electrical wires. The Backhoe came to a stop about 30 feet past the sump pump and paused for about 4 seconds and then proceeded on. The accident was not reported however when the sump pump failed to start a building maintenance employee reviewed the surveillance tape and discovered the accident. I received a call from building maintenance at about 16:00 and received the report.

In an interview with _____ on January 22, 2007 he denied being aware of hitting the electrical box but admitted that he may have hit it without knowing. I    also stated that I    was following him with a pickup. When asked why he stopped the vehicle 30 feet from the area of damage he said he did not remember stopping. Upon reviewing the video from camera 7009 I found that the backhoe entered the ticket spitter for long term parking at 9:39.00 am and all out riggers were in the up position. When the backhoe came into view at camera 6206 at 9:42.52 the right hand outrigger was down and almost touching the ground. On further review of camera 6202 at 9:43.31 it became evident that the operator raised the outrigger when he stopped just after hitting the electrical box.

On January 23, 2007 at about Noon _____ asked if he could speak with me at 15:00 and I agreed. During the meeting he said he remembered why he stopped, he said that                       called him on the radio and told him to stop and that his outrigger was down.

In an interview with _____ on January 23, 2007 at 15:20 he stated that he was shoveling snow at the sidewalk under the train trestle where it crosses the road that access the entrance to the parking garage. He looked up and saw ' coming up the road with the outrigger down and snow flying. He than ran to the pickup and called      on the radio and told him to stop and that his outrigger was down.      said that      stopped promptly, raised the outrigger and proceeded on his way. said he did not realize that the outrigger had hit anything. I told      that      said he was following with a pickup and again      said that he was shoveling snow. Review of the tapes support statement.

**2686**

Hartman Aff., Exh. D
Page 4 of 8

Page 1 of 2
**Exh. G. Att. 4**
Page 4 of 8



# MEMORANDUM

State of Alaska, Department of Transportation & Public Facilities

**Opinion:** I do not believe that _____ was acting with malicious intent however he did not ensure that his machine was safe for travel nor did he insure traffic control was conducted. The possibility of damage to property or injury to coworkers or public was high. Had the Left hand outrigger been left down it is likely that a private owned vehicle would have been hit.

**Recommendations:** I recommend pre-disciplinary hearing be conducted.  *agree*

2687

Hartman Aff., Exh. D
Page 5 of 8
Exh. G. Att. 4
Page 5 of 8
Page 2 of 2



**Ted Stevens**
**Anchorage**
**International Airport**

# M E M O R A N D U M
### State of Alaska, Department of Transportation & Public Facilities

**TO:**

Equipment Operator Journey II

**DATE:** February 14, 2007

**FAX NO:** (907) 266-2677
**TELEPHONE NO:** (907) 266-2726

**FROM:** Daniel Hartman
Manager, Airfield Maintenance

**SUBJECT:** Letter of Dismissal

In April 2006 a "last chance" Letter of Dispute Resolution (LDR) regarding your employment at the Ted Stevens International Airport was proposed by you and your union representative and agreed to by the State. The LDR required there could be no like or similar accident or occurrence that, in the judgment of the employer, could have been reasonably prevented through appropriate operator attention or effective operator intelligence. This LDR presented the last opportunity for you to demonstrate that you could maintain regularly effective, accountable and safe operator behavior and work in compliance with accepted operating protocols, policies and procedures. Failure to meet the conditions of the LDR would result in your dismissal from employment.

A meeting was conducted January 25, 2007 with you, your union representative, Dale Johnson, Charlotte Mushat, Dana Lattimore (Management Services), Dan Frisby (Assistant Airfield Manager), and myself to review and discuss an accident that occurred January 17, 2007 while you were driving the backhoe near the South Terminal garage. This accident and your activities were captured on tape by cameras mounted in the parking garage.

During the meeting you related that you were returning to the South Terminal garage from the airfield maintenance shop to help with a snow melt job. While driving the backhoe you had to take an alternate route through the long term parking lot, which passes under the railroad bridge because the ticket spitter on the far right was not working. You stated that you stopped before passing under the railroad trestle in order to lower the boom of the backhoe so that it would not come in contact with the trestle. You stated that you put the outriggers in the down position so that the machine would not bounce. You also stated that you then raised the outriggers part way and then passed under the trestle. After passing under the bridge you stated that you stopped to raise the boom. You also stated that you turned the seat to face to the rear, raised the boom and then raised the outriggers. While you checked to ensure the right hand outrigger was in the upright position you did not check the left hand side. You had no explanation for this oversight other than you thought you had heard and felt both riggers 'click' into the raised position. You said you turned the seat around and that you proceeded to drive

2688

through the long-term parking lot.   When exiting the long term parking lot you turned right onto the one-way road (going against traffic) running parallel to the East side of the parking garage and drove to the end. During this entire trip, the right hand outrigger was in the partially down position sticking out approximately 3 ½ feet. You stated that at one point you had to drive the backhoe on the far right of the road to make room for a vehicle coming from the opposite direction. During this maneuver the outrigger struck the electrical box.  You claimed that you did not feel or hear anything out of the ordinary. You further contend that it wasn't until        : informed you via radio that the outrigger was down that you stopped to raise it, not realizing that it had just made contact with an electrical box. As a result of the accident, the sump pump was inoperable all day, forcing the maintenance staff to search for the cause. While the overall cost may have been minimal (an electrician had to repair it and the electrical box had to be replaced) the inconvenience and hassle it posed for maintenance staff and the real potential for the incident to have caused greater damage to passing motorist and/or vehicles was immeasurable. If the outrigger had made contact with another vehicle and/or pedestrian, the liability to the employer would have been significant.

Your only explanation for driving against one-way traffic without a spotter was that it occurs all the time. However, as you know, you could have easily instructed        to stop traffic for you for a brief period while you traveled to the work site, particularly since you were driving against one-way traffic. This simple precautionary measure combined with operator attention to safe operating procedures would have prevented the accident and worked to ensure the safety of the public and employees.

Lack of appropriate operator attention is a major contributing factor in your history of reoccurring accidents. Your long-term experience as an equipment operator at the Ted Stevens International Airport, your involvement in many preventable vehicular accidents, and your failure to apply effective and safe operator judgment is characteristic behavior that has not been rectified.  Simply put, risky operator behavior unnecessarily threatens the safety of the public and safe and secure maintenance operations at the airport.

In determining the appropriate disciplinary consequences in light of this highly preventable accident, your full incident record, previous verbal and written counseling/direction, the terms of the Letter of Dispute Resolution dated April 2006, the details of the incident in question, and the explanation and testimony you provided at the January 25th meeting all were carefully considered.  Based on all relevant factors, I have determined there is sufficient cause to dismiss you from employment.  The dismissal is effective immediately.

**2689**

Hartman Aff., Exh. D
Page 7 of 8

Exh. G. Att. 4
Page 7 of 8

*Providing for the movement of people and goods and the delivery of State services*

You are entitled to receive two weeks severance pay. Your group health insurance coverage will continue only through the last day of this month. Please contact the LTC health trust for information on how to continue your health coverage, if you wish to do so. Please complete the attached paperwork that is provided to all employees at the separation of employment and mail or deliver them to Technical Services, DOT Payroll office at 550 W. 7th Avenue, Suite 1660, Anchorage 99501-3564. If you have any questions about completion of the forms, please contact Faye Parker, Human Resource Technician III at 269-0501.


cc:     Trudy Wassel, TSIA Administrative Manager
        Charlotte Mushat, DOA Management Consultant
        Local 71, Union


**2690**


**Hartman Aff., Exh. D**
**Page 8 of 8**


**Exh. G. Att. 4**
**Page 8 of 8**

*Providing for the movement of people and goods and the delivery of State services*