TALIS J. COLBERG
ATTORNEY GENERAL
Brenda B. Page
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Phone: (907) 269-5135
Fax: (907) 258-4978

Attorney for the State of Alaska, Department
of Transportation and Public Facilities

## IN THE DISTRICT COURT FOR THE UNITED STATES
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELSA BILLINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) |
| OF TRANSPORTATION AND PUBLIC | ) |
| FACILITIES | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No. 3:05-cv-0240 (TMB)

## AFFIDAVIT OF DAN HARTMAN

STATE OF MICHIGAN   )
                    )ss.
COUNTY OF TUSCOLA )

I, DAN HARTMAN, being first duly sworn upon oath, depose and state as

follows:

Affidavit of Dan Hartman
Elsa Billingham v. SOA/DOT&PF
3:05-cv-0240 (TMB)

Page 1 of 9

Exh. G
Page 1 of 9

1.      I am Manager of Airfield Maintenance for the State of Alaska, Department of Transportation and Public Facilities at the Ted Stevens Anchorage International Airport.  I have been Manager of Airfield Maintenance since March 2000. I served as Assistant Manager from April 1999 until March 2000.

2.      Airfield Maintenance is in charge of maintenance of runways, taxiways, roads, lighting, vehicles, equipment, and grounds at Ted Stevens Anchorage International Airport.  Airfield Maintenance employs a wide variety of employees, including laborers, electricians, equipment operators, radio technicians, mechanics, custodians, welders, machinists and administrative staff, to ensure that the Airport keeps running smoothly, efficiently, and safely.    Because Airfield Maintenance's responsibilities have a direct impact on the safety of the traveling public, its employees must understand and accept the necessity of working safely, efficiently, and under the direction of their supervisors.

3.      As part the duties of my position, I am responsible for decisions regarding hiring, discipline and termination of Airfield Maintenance employees.

4.      In addition, as part of my duties, I consulted and worked with Airfield Maintenance supervisors and representatives from Public Employees Local 71 union regarding performance and conduct problems, incidents and accidents involving Elsa Billingham.

5.      Ms. Billingham was employed at Airfield Maintenance when I started working there in 1999.  She continued in her employment there for approximately

Affidavit of Dan Hartman
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

Page 2 of 9

Exh. G
Page 2 of 9

five more years, until her termination in July 2004. During that time, I believed that Ms. Billingham had ongoing problems with her work performance and conduct. My belief was based on my personal observations of Ms. Billingham's performance and conduct, on Ms. Billingham's own admissions, and on the complaints and concerns brought to me by Ms. Billingham's supervisors and co-workers. Ms. Billingham's supervisors often found that Ms. Billingham was deficient in her ability and willingness to follow directions; judgment; safe performance; informing her supervisor of absences, incidents, and accidents; and her ability to accomplish job fundamentals without constant, close supervision.

6.    Although Ms. Billingham was counseled repeatedly regarding her performance deficiencies, she did not improve.

7.    Ms. Billingham also had an extensive history of incidents and accidents—many of which were the result of her failure to follow instructions. Some of the incidents were documented and some were not. The cumulative nature of the incidents and Ms. Billingham's failure to correct her conduct led to progressive disciplinary action and contributed to the final decision to terminate her employment.

8.    For example, on July 31, 2000, Ms. Billingham received a three-day suspension for an incident in which she failed to follow her supervisor's directions and caused damage to a passing vehicle. I was involved in the disciplinary process for this incident. It was my understanding that Ms. Billingham's supervisor had given her explicit instructions to use a push mower to mow a small grass area near the road—

*Affidavit of Dan Hartman*
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

Page 3 of 9

Exh. G
Page 3 of 9

instructions that she disregarded. Instead of using the push mower, Ms. Billingham took a more powerful riding mower, which threw a rock and hit a passing vehicle. The rock shattered the vehicle's passenger window, reportedly causing minor injuries to the driver, but fortunately missing a baby in the back seat. Ms. Billingham failed to take responsibility for her actions and did not express remorse for the incident.

9.      Soon after, in August 2000, Ms. Billingham admitted that she looked through a foreman's personal logbook without his knowledge or permission, tore a page out, ripped it up and threw it away, and then lied about the incident. Because Ms. Billingham's years of state service and expressions of remorse were considered mitigating factors, Ms. Billingham was not terminated but, instead, was suspended for five days and scheduled to attend and anger management class. Ms. Billingham was warned that any future similar occurrences would result in further disciplinary action up to and including termination.

10.     Several months later, in November 2000, Ms. Billingham was involved in another incident in which she refused to follow her supervisor's repeated direct orders not to use a four-wheeler for snow removal on sidewalks near the terminal, which her supervisor believed created an unsafe condition for the traveling public. Ms. Billingham received a third suspension for the incident—this time for ten days. I warned her in writing that, should she continue to ignore her supervisor's directives, the State would have no recourse except to consider terminating her employment.

Affidavit of Dan Hartman
Elsa Billingham v. SOA/DOT&PF
3:05-cv-00240 (TMB)

Page 4 of 9

Exh. G
Page 4 of 9

11.    These incidents contributed to Ms. Billingham's unacceptable rating in her next evaluation, which her supervisor attempted to review with her on January 23, 2001. It was reported to me that during the review, Ms. Billingham became angry, called her supervisor a "bastard" and walked out. Because Ms. Billingham apologized to her supervisor and was remorseful about the incident, she was not terminated but, instead, was suspended for twelve days.

12.    In July 2002, Ms. Billingham again was disciplined for two incidents in which she reportedly failed to follow her supervisor's orders to mow specific areas and water specific flower beds. Because of her prior disciplinary history for the same type of behavior, Ms. Billingham was suspended for thirty days, warned that any future occurrences of the same nature may be cause for her dismissal, and advised to take the warning seriously, "as this is the last chance to change your behavior."

13.    Soon after, Ms. Billingham was given another chance and a "Final Warning & Discipline" on September 26, 2002, when she received a thirty-day suspension for disobeying an explicit directive not to operate or drive the flush truck and for attempting to persuade a co-worker to "change his story" regarding the incident. I informed Ms. Billingham in writing that another act of insubordination or refusing or failing to obey her supervisors would result in immediate discharge.

14.    On April 16, 2003, Ms. Billingham was involved in another incident in which she left the scene of an accident without informing her supervisor. Specifically, Ms. Billingham admitted that she backed a pickup truck into a stop sign and drove away

Affidavit of Dan Hartman
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

Page 5 of 9

**Exh. G
Page 5 of 9**

from the accident scene without immediately calling her supervisor, as required. My understanding was that when Ms. Billingham left the accident site, the stop sign was bent at a 45-degree angle, posing a hazard to passing traffic. This incident—in which Ms. Billingham again refused to follow instructions and policy—combined with her poor work history, disciplinary record, and failure to take responsibility for her actions, was the last straw, leading my decision to terminate Ms. Billingham's employment.

15.    I consulted with Charlotte Mushat, and Mort Plumb, Airport Director, who both concurred with this decision.

16.    On June 10, 2003, Charlotte Mushat, and Corky Caldwell, Deputy Director of the Airport, and I met with Ms. Billingham and her union representatives, Billy Meers and Jim Ashton, to inform Ms. Billingham of her termination. At the meeting, Jim Ashton intervened on Ms. Billingham's behalf and convinced us, Airport management, to give Ms. Billingham yet another chance to maintain her employment. The union negotiated a Letter of Dispute Resolution with us to allow Ms. Billingham to maintain her employment under agreed-upon terms.

17.    I agreed not to terminate Ms. Billingham and to allow her to continue her employment at Airfield Maintenance under the terms set out in the Letter of Dispute Resolution, also known as a Last Chance Agreement.

18.    When Ms. Billingham returned to work, the parties agreed that Airfield Maintenance management would provide regular evaluations to give her

*Affidavit of Dan Hartman*
*Elsa Billingham v. SOA/DOT&PF*
*3:05-cv-0240 (TMB)*

Page 6 of 9

**Exh. G**
**Page 6 of 9**

feedback regarding if she was meeting performance expectations and, if necessary, how she could improve her performance.

19.     When Ms. Billingham returned to work under the terms of the Last Chance Agreement, her problematic conduct continued. The same issues that had led to previous discipline arose again—failure to follow instructions, failure to use reasonable judgment, failure to follow leave policies, and inefficient use of time. Ms. Billingham's supervisors met with her five times between July and November 2003, to give her feedback on her performance progress. During this period, Ms. Billingham's supervisors rated her performance as low-acceptable and unacceptable in June and July; unacceptable in August; mid-acceptable in October; and low-acceptable in November. True and accurate copies of written Statements of Progress and a Memo for the Record for this period are attached to this Affidavit as Exhibit A. These documents were generated in the regular course of business of Airfield Maintenance.

20.     Several times during the feedback sessions, Ms. Billingham became argumentative and, in November 2003, she told me that she did not want to get any more feedback and did not want to be informed as to what she needed to improve to meet a "mid acceptable" performance level as required by the Last Chance Agreement.

21.     Ms. Billingham's supervisors continued to draft progress reports for Ms. Billingham over the next months, even though she refused to discuss them. Ms. Billingham's performance continued much the same--she received one mid-acceptable rating, one low-acceptable rating and three unacceptable ratings between January and

Affidavit of Dan Hartman
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

Page 7 of 9

**Exh. G**
**Page 7 of 9**

June 2004. True and accurate copies of the written progress reports for that period are attached to this Affidavit as Exhibit B. These documents were generated in the regular course of business at Airfield Maintenance.

22.   Ms. Billingham did not raise her performance level to mid-acceptable for the year and refused to accept feedback to assist her in reaching that goal. Therefore, I made the decision to terminate her employment. I consulted with Charlotte Mushat and Mort Plumb, who both concurred with the decision. On June 28, 2004, Ms. Billingham was dismissed from employment at Airfield Maintenance because she did not achieve the standard of performance required under the Last Chance Agreement. A true and correct copy of the letter informing Ms. Billingham of her termination is attached to this Affidavit as Exhibit C. At the time of Ms. Billingham's termination, I was 59 years old.

23.   During my tenure as Manager of Airfield Maintenance, I have hired every female applicant referred to me by Local 71, in positions ranging from laborer to equipment operator and electrician. I have hired individuals from all age groups, including an individual who was 69 years old when hired. I have terminated (or allowed to resign in lieu of termination) between 15 to 20 employees since March 2000, the youngest aged in his mid-20's. Ms. Billingham is the only female employee that I have terminated.

24.   I have agreed to enter into Last Chance Agreements with three employees—Ms. Billingham and two others. Both of the other employees were male,

Affidavit of Dan Hartman
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

Page 8 of 9

Exh. G
Page 8 of 9

both violated the terms of the Last Chance Agreements, one was allowed to resign in lieu of termination and the other was terminated. Copies of the Last Chance Agreements and accompanying termination and dismissal notices are attached as Exhibit D. These copies are true and accurate except that the individuals' names have been redacted to protect confidentiality.

25.     I did not recommend Ms. Billingham for rehire with the Department because she was terminated for unsatisfactory performance of her duties.

26.     By my signature, I certify that I have assisted in the preparation of this affidavit, that the information is true and correct to the best of my knowledge and belief, and that I am executing this affidavit of my own free will, without coercion or promise of inducement. I make this affidavit on the basis of my personal knowledge and business records to which I have access in my official capacity. I am prepared to testify further about the matters addressed in this affidavit at trial, if necessary.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_Dan Hartman_

DAN HARTMAN

SUBSCRIBED AND SWORN to before me this 2 day of _Nov_ 2007.

_W. Burrows_

Notary Public in and for ~~Alaska~~ *Michigan*
My Commission Expires: _12/08/2011_

W.D. BURROWS
Notary Public, State of Michigan, County of Huron
My commission expires 12-08-2011
Acting in the County of Huron

Affidavit of Dan Hartman
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

Page 9 of 9

Exh. G
Page 9 of 9