TALIS J. COLBERG
ATTORNEY GENERAL
Brenda B. Page
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Phone: (907) 269-5135
Fax: (907) 258-4978

Attorney for the State of Alaska, Department
of Transportation and Public Facilities

IN THE DISTRICT COURT FOR THE UNITED STATES
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELSA BILLINGHAM,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STATE OF ALASKA, DEPARTMENT<br>OF TRANSPORTATION AND PUBLIC<br>FACILITIES<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:05-cv-0240 (TMB) |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Defendant, the State of Alaska, Department of Transportation and Public Facilities ("DOT/PF"), by and through the Office of the Attorney General, submits this reply in support of its motion for summary judgment. All of Plaintiff Elsa Billingham's remaining claims should be dismissed because there are no genuine issues of material fact and the State is entitled to judgment as a matter of law.

I.     **MS. BILLINGHAM'S EXHIBIT DOCUMENTS SHOULD NOT BE CONSIDERED BY THE COURT**

The State objects to the exhibit documents submitted by Ms. Billingham in support of her opposition to the State's motion for summary judgment because the documents fail to comport with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and are not admissible as evidence.[1] As the party opposing summary judgment, Ms. Billingham must establish that there is a genuine issue of material fact by tendering evidence of specific facts in the form of affidavits or admissible discovery material. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348 (1986).

A trial court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Authentication or identification is a "condition precedent to admissibility," and is satisfied by "evidence sufficient to support a finding

---

[1] The State served its motion for summary judgment and exhibits by mail on Ms. Billingham on November 5, 2007. The State also filed its brief with the Court on November 5, 2007, but, due to problems with electronic filing of the exhibits, requested and was granted a one-day extension of time to file its exhibits. The State filed its exhibits on November 6, 2007, and an errata to the summary judgment motion correcting the page citations to a few exhibits. The State served the errata and a new set of exhibits, which included the few pages that had been inadvertently omitted due to the incorrect page citations, on Ms. Billingham by mail on November 6, 2007. Ms. Billingham's opposition was due to be served and filed on November 23, 2007—fifteen days after service of the State's motion. D. Ak. LR 7.1(e). Although she served her opposition by hand delivery on the State on November 23, 2007, the Court's docket indicates that she did not file it with the Court until November 26, 2007.

Defendant's Reply in Support of its Motion for Summary Judgment      Page 2 of 17
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Unauthenticated documents cannot be considered in a motion for summary judgment. *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Beyene*, 854 F.2d at 1182.

In this case, Ms. Billingham filed an "exhibit" with her opposition consisting of a collection of her written allegations, a selection of pages from an "Accident Summary Log," and some miscellaneous documents apparently related to accidents by Airfield Maintenance employees.[2] Ms. Billingham's written allegations concerning accidents involving various supervisors and co-workers at Airfield Maintenance are unsworn and unsupported by any authenticated evidence. Most of the allegations are not based on Ms. Billingham's personal knowledge, but consist of speculation and inadmissible hearsay. Because the allegation documents are unauthenticated and the allegations themselves are not admissible evidence, the documents do not meet the requirements of Rule 56(e) and should not be considered on summary judgment.

The other documents consist of parts of an "Accident Summary Log" and some memoranda and accident reports. The pages from the Accident Summary Log are documents that the State produced to Ms. Billingham in discovery. Ms. Billingham, however, has submitted only select pages from the document and has provided no

---

[2] The documents filed by Ms. Billingham contain unredacted personnel information and should be filed under seal pursuant to the protective order in this case. The State will file a motion concurrent with this reply requesting that the documents be filed under seal.

Defendant's Reply in Support of its Motion for Summary Judgment    Page 3 of 17
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

authentication or evidence as to what the document is, what information it contains, or how or when the information in the document was compiled. Without such authentication, the document, and the information it contains, is inadmissible. *Beyene*, 854 F.2d at 1182. Likewise, the memoranda and accident reports are not authenticated and are inadmissible.

For all of these reasons, none of the exhibit documents submitted by Ms. Billingham in support of her opposition should be considered by the Court in ruling on this motion for summary judgment.

## II. THIS COURT PREVIOUSLY DISMISSED MANY OF MS. BILLINGHAM'S CLAIMS

Ms. Billingham filed a document entitled "Plaintiff's Opposition to Defendant's Errata to Motion for Summary Judgment," in which she alleges that she was passed over for promotion and was given less opportunities and equipment time than men during her employment at Airfield Maintenance. Ms. Billingham's claims of discrimination and retaliation based on allegations that she was denied employment opportunities, passed over for promotions, and "demoted" under the Last Chance Agreement were dismissed as untimely by the Court on May 15, 2006. The only remaining claims to be addressed in this litigation are her claims that her termination in 2004 was retaliatory and discriminatory based on age and sex and that her ineligibility for rehire with DOT/PF was retaliatory.

### III. THE STATE IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF MS. BILLINGHAM'S REMAINING CLAIMS

To defeat summary judgment, Ms. Billingham must show that there are genuine issues of material fact "such that a reasonable jury could return a verdict" for her. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). She has not done so and the State is entitled to judgment as a matter of law.

#### A.  Ms. Billingham's Discrimination Claims Should Be Dismissed

Summary judgment is warranted for Ms. Billingham's claims of sex and age discrimination because she has neither established a *prima facie* case nor shown that the reasons for her termination were merely a pretext for discrimination.[3]

##### 1.  Ms. Billingham failed to establish a *prima facie* case of discrimination

Ms. Billingham has failed to establish two essential elements of a *prima facie* case of discrimination—that she was performing according to her employer's legitimate expectations and that employees similarly situated to her were treated more favorably. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004); *Haroldsen v. Omni Enters., Inc.*, 901 P.2d 426, 430-31 (Alaska 1995). As a result, her discrimination claims must fail.

---

[3] As discussed in the State's opening brief, sovereign immunity bars Ms. Billingham from bringing an age discrimination claim against the State under the federal Age Discrimination in Employment Act. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91, 120 S. Ct. 631 (2000).

The undisputed evidence shows that Ms. Billingham was not performing according to her employer's legitimate expectations. As discussed at length in the State's opening brief, the record evidence shows that Ms. Billingham's supervisors, Airfield Maintenance management, and Ms. Billingham's union representatives believed that Ms. Billingham's performance was unacceptable.

Ms. Billingham had long history of performance and conduct issues during her employment at Airfield Maintenance. The evidence shows that in June 2003, in lieu of termination, Airfield Maintenance management agreed to allow Ms. Billingham one final chance to change her conduct and raise her performance level under the terms of a Last Chance Agreement. Ms. Billingham acknowledges that she understood the terms of the agreement and that she knew she would be terminated if she failed to meet its terms. Ms. Billingham admits that her performance did not meet a "mid-acceptable" level during the last year of her employment and that she intentionally flouted the terms of the Agreement by applying for promotions. (Bill. Dep. at 190-95, 197-98). There simply is no evidence to show that Ms. Billingham's performance or conduct met her employer's legitimate expectations.

Ms. Billingham also failed to show that employees similarly situated to her were treated more favorably. To defeat summary judgment, Ms. Billingham must show that she received less favorable treatment than another employee who was similarly situated in all material respects. *Moran v. Selig,* 447 F.3d 748, 755 (9th Cir. 2006). In

this case, this is an exacting requirement because Ms. Billingham was subject to the terms of a Last Chance Agreement. Therefore, she must show that a co-worker who "amassed a record of misconduct" comparable to hers and was subject to the terms of a Last Chance Agreement was treated more favorably than she was treated. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). She has not and cannot make such a showing.

As the Ninth Circuit Court found in *Leong*, the only other employees who arguably can be considered similarly situated to Ms. Billingham are the two male employees who also were subject to a Last Chance Agreement under Dan Hartman's tenure as manager. As with Ms. Billingham, both of those employees failed to fulfill the terms of the Last Chance Agreements and both were discharged.[4] Therefore, they were not treated more favorably than Ms. Billingham.

In her opposition, Ms. Billingham argues that "similarly situated men" who were involved in accidents were not subjected to the same type of discipline that she received. Her allegations are unsupported by any admissible evidence. Even if her inadmissible exhibit documents could be considered, however, they would not create a genuine issue of fact because she has not shown any individuals who were similarly situated to her in all material respects.

---

[4] One employee was terminated and one was allowed to resign in lieu of termination. (Hartman Aff. ¶ 24).

Ms. Billingham's allegations focus only on discipline for accidents, but Ms. Billingham's performance and conduct issues involved much more than just accidents. The evidence shows that Ms. Billingham's performance and discipline problems primarily arose from her repeated and willful failure to follow directions and policies, her insubordinate conduct, her dishonest conduct, her poor judgment, her problems getting along with co-workers, her argumentative behavior, her failure to complete work assignments, and her safety violations. For example, as illustrated in disciplinary memoranda and performance evaluations, Ms. Billingham's failure to take direction and to take responsibility and learn from her mistakes was a serious and ongoing issue:

- You were clearly directed several times to use a particular piece of equipment to mow the area but you failed to do so. ... You failed to accept any responsibility for your actions, you did not express any remorse for the outcome, and you were not entirely honest in the hearing. (Bill. Dep. Exh. 26).

- You were clearly directed four times to use a shovel to clear the sidewalks but you failed to do that. You have received two other suspensions in the past five months for the same type of behavior. Because of your failure to accept responsibility and continuing refusal to comply with your supervisor's instructions, you are suspended ... Accepting supervision, following instructions and accepting responsibility are basic requirements of the employment relationship ... Your supervisor is the individual responsible for all his subordinates' actions and is the expert in determining the best piece of equipment to utilize in performing different tasks. Your continued refusal to comply with his directives places the traveling public and fellow

employee's lives and safety in serious jeopardy. (Bill. Dep. Exh. 28).

- She did not follow instructions on placement of irrigation lines and then when questioned failed to admit her mistake. (Hartman Aff. Exh. A, p. 2).

- Elsa needs to accept what her supervisor tells her .. [she] asked to have a curb and gutter broom sweep in a parking lot. She was told "no" by her immediate supervisor. Elsa then went to the foreman and asked the same question and again, she was told "no." Once again Elsa went up the chain to the Airfield Maintenance Manager and asked Dan Hartman the same question. Once more she was told "no." This course of action is a waste of time and not called for … [s]he should follow the direction of her immediate supervisor. (Hartman Aff. Exh. A, p. 4).

- Elsa needs to accept what her supervisor tells her and not go up the management chain … Elsa talked with higher supervision about the use of a four-wheeler and plow to clear snow after she had been specifically told by her foreman to use a shovel and not use a four-wheeler. This incident is particularly disturbing since she was counseled on this very subject in her last progress report. (Hartman Aff. Exh. A, p. 5).

- Ms. Billingham has at times during this period shown the same type of behavior that resulted in her receiving her final letter of warning. She did not follow specific directions on several occasions. In at least two of those occasions she created a safety hazard for herself and the traveling public. (Hartman Aff. Exh. B, p. 6).

Another factor that contributed to Ms. Billingham's progressive discipline and termination was her insubordinate conduct. For example, Ms. Billingham admits that

she looked through a foreman's personal logbook without his permission, tore a page out, ripped it up, threw it away, and then lied about the incident. Not only is there no evidence of any other employees who engaged in such misconduct, but Jim Ashton from Local 71 testified that Ms. Billingham's actions were grounds for termination, other union members have been terminated for similar offenses, and that the five-day suspension that she received for this incident "was a kind discipline for that offense." (Ashton Dep. at 35).

According to Ms. Billingham's own union representatives, she was given more chances to correct her conduct than other employees, Airfield Maintenance went "above and beyond" in trying to work with her, and other employers would have terminated Ms. Billingham "a long time prior to that." (Ashton Dep. at 50; Meers Dep. at 21-22; Johnson Dep. at 22). As in the *Leong* case, Ms. Billingham's record of reprimands and suspensions suggests that Airfield Maintenance was generous in affording employees second chances but it "must be permitted to draw the line somewhere." *Leong*, 347 F.3d at 1124.

Finally, although Ms. Billingham argues that she was "punished more harshly" than others who had accidents, she failed to indicate that two of the individuals to whom she tried to compare herself also were terminated. (Second Hartman Aff. ¶ 8, attached as Exh. 1). One individual Ms. Billingham identified as an alleged comparator

was one of the employees who was placed on a Last Chance Agreement and was terminated when he violated the terms of that agreement. (Second Hartman Aff. ¶ 8). Another individual identified as a potential comparator by Ms. Billingham was not given a "last chance" but was allowed to resign in lieu of termination. (Second Hartman Aff. ¶ 8).

Thus, even if Ms. Billingham's inadmissible allegations and documents could be considered in this summary judgment, she has not shown any similarly situated employees who were treated more favorably. There is no evidence of other employees who amassed a record of the same type and degree of misconduct and continuing performance issues for which Ms. Billingham was disciplined and, ultimately, terminated. (Second Hartman Aff. ¶ 7). Rather, the evidence shows that the only employees who might be considered similarly situated—those subject to Last Chance Agreements—also were terminated.

### 2. Ms. Billingham failed to establish that the reasons for her termination were a pretext for discrimination

Even if Ms. Billingham established a *prima facie* case, which she has not, she also failed to raise a genuine issue of fact regarding pretext. The State supported its motion with ample evidence of DOT/PF's legitimate non-discriminatory reasons for Ms. Billingham's termination—her continuing performance problems and failure to bring her performance to an acceptable level as required by the Last Chance Agreement. Ms.

Billingham did not meet her burden of showing "specific and substantial" evidence that DOT/PF's reasons were a pretext for discrimination. *Nilsson v. City of Mesa,* 503 F.3d 947, 954 (9th Cir. 2007). To avert summary judgment, Ms. Billingham must do more than make conclusory allegations of discriminatory intent—she must show that DOT/PF management did not believe or was not actually motivated by its stated reasons for her termination. *Villiarimo v. Aloha Island Air. Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002); *Lindsey v. Shalmy,* 29 F.3d 1382, 1385 (9th Cir. 1994).

The undisputed record evidence shows Ms. Billingham's history of repeated and continuing misconduct and performance problems and that Airfield Maintenance management gave Ms. Billingham multiple chances to improve her conduct and performance. When Ms. Billingham continued with the same problematic conduct and performance issues, even while subject to a Last Chance Agreement, she was terminated. There is no evidence showing that Airfield Maintenance management did not honestly believe the reasons for Ms. Billingham's termination. Moreover, the reasons for her termination are supported by Ms. Billingham's own union representatives. They investigated her grievance allegations and testified that Airfield Maintenance had reasonable grounds to terminate her employment and that they found no evidence of disparate treatment, discrimination or retaliation in her termination. (Ashton Dep. at 63-68; Dougherty Dep. at 7-14, 18-25; Johnson Dep. at 12-13, 22, 26).

Ms. Billingham has fallen far short of providing specific and substantial evidence of pretext and the State is entitled to judgment as a matter of law.

### B. Ms. Billingham's Retaliation Claims Should Be Dismissed

As with her discrimination claims, Ms. Billingham has neither established a *prima facie* case of retaliation nor shown pretext. Ms. Billingham alleges that her termination was retaliatory and that DOT/PF's subsequent determination that she was ineligible for rehire for positions in the Department also was retaliatory. She has presented no evidence, however, establishing a causal connection between protected activity and either of these adverse actions—a necessary element in a *prima facie* case. *Villiarimo*, 281 F.3d at 1064.

The evidence in this case undercuts any inference of causation for two reasons. First, there is a lack of temporal proximity between Ms. Billingham's complaint filings with the Equal Employment Opportunity Commission in August 2002 and January 2004 and her termination in June 2004. *See Villiarimo*, 281 F.3d at 1065 (holding that to support an inference of causation, termination must occur fairly soon after employee's protected activity). Second, Ms. Billingham was disciplined for the same performance issues both before and after she made her complaints. *See Kaspar v. Federated Mut. Ins.*, 425 F.3d 496, 504 (8th Cir. 2005)(holding that evidence of an employer's concerns about an employee's performance before protected activity undercuts finding of causation).

Ms. Billingham also failed to show that the reasons for her termination or her ineligible for rehire status were merely a pretext for retaliation. Ms. Billingham has provided no evidence of retaliation aside from her speculation, which is insufficient to avert summary judgment. *Villiarimo,* 281 F.3d at 1065, n. 10. The evidence shows that others who were terminated for cause by DOT/PF also were ineligible for rehire and that requests to Local 71 that such individuals not be referred for future employment was a common and accepted practice by DOT/PF and Local 71.

Accordingly, because Ms. Billingham has failed to establish a *prima facie* case of retaliation and has not shown evidence of pretext, her retaliation claims must be dismissed.

### C. Ms. Billingham's Claim for Breach of the Covenant of Good Faith and Fair Dealing Should Be Dismissed

There is no evidence in this case to support a claim for breach of the covenant of good faith and fair dealing. The covenant, implied in all employment contracts under Alaska law, has two elements—a subjective or pretext element and an objective element. *Blackburn v. State, Dep't of Transp.,* 103 P.3d 900, 907 (Alaska 2004); *Ramsay v. City of Sand Point,* 936 P.3d 126, 133 (Alaska 1997). An employer engages in subjective bad faith if the employer is motivated by the goal of depriving the employee of a benefit under the contract. *Id.* Moreover, an "employer who acts in accordance with the express terms of a contract satisfies the covenant's objective

Defendant's Reply in Support of its Motion for Summary Judgment       Page 14 of 17
*Elsa Billingham v. SOA/DOT&PF*
3:05-cv-0240 (TMB)

component." *Chijide v. Maniilaq Ass'n of Kotzebue*, 972 P.2d 167, 172 (Alaska 1999). An employee's own speculation, opinion or assumptions about the employer's motivations are insufficient to raise a genuine issue of fact to defeat summary judgment. *French v. Jadon, Inc.*, 911 P.2d 20, 27 and n.6 (Alaska 1996).

There is no evidence that DOT/PF was motivated by the goal of depriving Ms. Billingham of a benefit under her employment contract. Rather, the evidence shows that Airfield Maintenance management gave Ms. Billingham multiple "last" chances to retain her employment. Moreover, the evidence shows that DOT/PF acted in accordance with the express terms of the contracts applicable to her employment—the collective bargaining agreement and Last Chance Agreement. Ms. Billingham's union representatives—the individuals responsible for ensuring that she receives her contractual rights—testified that her termination was based on reasonable cause, was done in accordance with the terms of the CBA and Last Chance Agreement and that they believed that Airfield Maintenance management acted in good faith.

Therefore, as a matter of law, this claim should be dismissed.

## IV. CONCLUSION

For the reasons set forth above in the State's opening brief, DOT/PF respectfully requests that summary judgment be entered in its favor and Ms. Billingham's claims be dismissed in their entirety with prejudice.

RESPECTFULLY submitted this: <u>30th day of November, 2007</u>.

TALIS J. COLBERG
ATTORNEY GENERAL
By: <u>/s/ Brenda B. Page</u>
Assistant Attorney General
Attorney General's Office
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
(907) 269-5136 (Phone)
(907) 258-4978 (Fax)
LSA_ECF@law.state.ak.us
Alaska Bar No. 0303007

**CERTIFICATE OF SERVICE**

This is to certify that on November 30, 2007, a true and correct copy of Defendant's Reply In Support of its Motion for Summary Judgment in this proceeding was served by first class U.S. Mail on the following:

    Elsa Billingham
    P.O. Box 231625
    Anchorage, AK 99523

By: /s/ Leticia Alvarez

Leticia Alvarez, Law Office Assistant
Attorney General's Office