IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELSA BILLINGHAM,<br><br>                Plaintiff,<br><br>   vs.<br><br>STATE OF ALASKA, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES<br><br>                Defendant. | Case No. 3:05-cv-0240 TMB<br><br>O R D E R<br>**Granting the Defendant's Motion<br>for Summary Judgment** |

## **I. MOTION PRESENTED**

The Defendant, State of Alaska, Department of Transportation and Public Facilities ("DOT/PF"), moves for summary judgment on the Plaintiff's remaining claims in this employment discrimination suit. On April 24, 2008, the Court heard oral argument on this motion, which the Plaintiff opposes. Because the Plaintiff has failed to establish a prima facie case of discrimination or retaliation, or to raise a genuine issue of material fact as to whether the Defendant violated the covenant of good faith and fair dealing, the Court GRANTS the Defendant's motion.

## **II. BACKGROUND**

Elsa Billingham began working for DOT/PF in May 1994 as part of Airfield Maintenance[1] at Ted Stevens Anchorage International Airport. She held various positions, including laborer, custodian, and equipment operator. During her tenure with DOT/PF, Billingham was disciplined a number of times for workplace infractions, including failing to follow her supervisors' instructions and failing to report accidents involving DOT/PF vehicles and equipment.[2] Billingham's disciplinary history culminated in a thirty-day suspension, demotion and restrictions on training as

---

[1] Airfield maintenance is in charge of runways, taxiways, roads, lighting and vehicle equipment at the airport.

[2] Mushat Aff., Exs. A-K.

1

part of a Letter of Dispute Resolution, or so-called "Last Chance Agreement," negotiated by her union, Public Employees Local 71, on June 10, 2003. This agreement allowed Billingham to keep her job if she accepted the voluntarily demotion and suspension, and achieved a performance rating of mid-acceptable one year after making the agreement. It also called for Billingham to be dismissed if she did not achieve the mid-acceptable performance level.

Before bringing this lawsuit, Billingham on January 23, 2004 filed a complaint against DOT/PF with the Equal Employment Opportunity Commission ("EEOC")[3], alleging age and sex discrimination in violation of state and federal law.[4] Billingham claimed that she was subject to discriminatory punishment and coerced into signing the Last Chance Agreement. She also asserted that the actions taken against her by DOT were done in retaliation for an earlier, separate claim she had filed with the EEOC in August 2002.[5] After investigating Billingham's claims, the EEOC found that her January 2004 complaint was not supported by substantial evidence that would establish a violation of federal law.[6] On November 2, 2004, the Alaska State Commission for Human Rights ("ASCHR") adopted the EEOC's determination and dismissed her complaint for lack of evidence.[7]

On December 2, 2004, Billingham appealed the ASCHR's decision in state Superior Court, claiming that the ASCHR had abused its discretion and failed to adequately investigate the evidence

---

[3] Although Billingham filed her complaint with the EEOC, the ASCHR informed Billingham that it considered her EEOC filing as a charge with the Commission as well. Under a work-share agreement between the two agencies, only one agency proceeds initially with an investigation to avoid duplicating efforts. Def.'s Suppl. Ex. 4 at 2.

[4] Def.'s Suppl. Ex. 1. In her January 2004 complaint to the EEOC, Billingham alleged violations of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

[5] *Id.* The EEOC and ASCHR had dismissed Billingham's first complaint, filed in 2002, in which she alleged sex and age discrimination with regard to training, work assignments, promotions and discipline.

[6] Def.'s Suppl. Ex. 2.

[7] *Id.*

2

she submitted in support of her claim.[8] The Superior Court affirmed the ASCHR's dismissal of Billingham's retaliation claim, finding that she had not established a prima facie case.[9] In particular, the court found that Billingham failed to demonstrate a causal link between the filing of her August 2002 complaint and disciplinary action taken by DOT/PF. But the Superior Court remanded the case to the ASCHR for more detailed findings regarding her age and sex discrimination claims.[10] After reviewing additional evidence submitted by Billingham, the ASCHR concluded, as with the retaliation claim, that her discrimination claims also lacked substantial evidence.[11] Specifically, ASCHR found that Billingham "continually failed to follow [her] supervisor's instructions and failed to accept responsibility for her work-related errors and accidents."[12] ASCHR further found that although Billingham had identified nine male coworkers who were purportedly disciplined less harshly than she was, the evidence showed that none of the nine had more safety-related incidents or accidents than Billingham. In addition, the Commission found that Billingham was primarily disciplined for failing to follow instructions and for refusing to accept responsibility for her work-related errors. On remand, the Superior Court on August 21, 2007 affirmed the ASCHR's decision, concluding that Billingham had not established a prima facie case of discrimination under state law.[13]

Billingham filed her third complaint with ASCHR and the EEOC on December 30, 2004, alleging that she was fired in retaliation for her prior complaints, and that she was unable to secure other employment with DOT/PF because she had been "blacklisted" by the agency and her own union. The EEOC dismissed this complaint on July 18, 2005.

---

[8] Def.'s Suppl. Ex. 3.

[9] Def.'s Suppl. Ex. at 8-9.

[10] *Id.*

[11] Def.'s Suppl. Ex. 6.

[12] Def.'s Suppl. Ex. 6 at 2.

[13] Def.'s Suppl. Ex. 7.

3

Billingham initiated this suit on October 11, 2005, and filed an amended complaint on March 7, 2006. Her Second Amended Complaint alleges three counts under Title VII, 42 U.S.C. 2000e-2, and the Alaska Human Rights Law, AS 18.80.220: 1) discrimination based on being passed over for promotions, inappropriate conduct by supervisors and a lack of response from supervisors when she reported inappropriate conduct by co-workers; 2) wrongful termination based on sex discrimination and retaliation; retaliation based on the Defendant's "blacklisting" of her from future work for DOT/PF; and 3) breach of the covenant of good faith and fair dealing. In a May 15, 2006 ruling, this Court dismissed Billingham's claims against individual employees of DOT/PF, leaving only the State as a Defendant. The Court also dismissed the claims brought in Billingham's first two EEOC complaints, filed in August 2002 and January 2004, as time-barred, because she failed to file timely lawsuits after the EEOC's dismissal of the claims.

### III. STANDARD OF REVIEW

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."[14] A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.[15]

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party.[16] The evidence presented must be admissible.[17] Conclusory,

---

[14] Fed. R. Civ. Proc. 56(c).

[15] *See Celotext Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[16] *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

[17] Fed. R. Civ. Proc. 56(e).

speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.[18]

## IV.  DISCUSSION

The Defendant argues that it is entitled to summary judgment on the Plaintiff's remaining claims based on collateral estoppel and because she has not established a prima facie case for wrongful discharge or retaliation in connection with her 2004 dismissal. In addition, they assert that she has failed to rebut evidence of legitimate, nondiscriminatory reasons for her discharge and the Defendant's classification of her as ineligible for rehire.

### A. Collateral Estoppel

The Defendant asserts that the Superior Court's July 7, 2006 and February 15, 2008 rulings preclude Billingham from relitigating issues of retaliation or discrimination that allegedly occurred before her January 2004 termination. As noted above, the Superior Court held that Billingham failed to establish retaliation or discrimination by DOT/PF when she was subject to progressive discipline and placed under the terms of the negotiated "Last Chance Agreement."

The federal full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that they would be given in the state's own courts.[19] The statute provides that: "[t]he . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ."[20] Given this, federal courts routinely apply res judicata and collateral estoppel to issues decided by state courts.[21] Res judicata precludes the parties from relitigating issues that were or could have been raised in the earlier state-court action.[22] And under collateral estoppel, once a court decides an issue of fact or law necessary

---

[18] *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

[19] *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 (1982).

[20] 28 U.S.C. § 1783.

[21] *Kremer*, 456 U.S. at 466.

[22] *Id*.

5

to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties.[23] Both doctrines conserve judicial resources, prevent inconsistent decisions, and "promote the comity between state and federal courts that have been recognized as a bulwark of the federal system."[24]

The Alaska statute under which Billingham filed her ASCHR complaints, AS 18.80.220, gives preclusive effect to Superior Court decisions affirming the ASCHR's resolution of a complaint. The statute provides that:

> The acquittal of a person by the commission or a court of competent jurisdiction of any alleged violation of this chapter is a bar to any other action, civil or criminal, based on the same act or omission.[25]

The statute defines "person" to include employers.[26]

Thus, the two Superior Court decisions, issued on July 7, 2006 and February 15, 2008, will be given preclusive effect by this Court. As stated above, the first decision affirmed the ASCHR's conclusion that Billingham's pre-termination retaliation claim lacked substantial evidence. That claim was based on Billingham's assertion that a demotion in June 2003 was retaliation for a previous discrimination claim filed in August 2002. The Superior Court's second decision found that Billingham had failed to establish a prima facie case of age and sex discrimination based on alleged disparities in training and discipline.

None of Billingham's complaints to the ASCHR included any allegations regarding her termination. However, the Superior Court's decisions are still relevant to the wrongful termination and post-dismissal retaliation claims now before the Court. In essence, the Superior Court's opinions narrow the issues this Court must consider in weighing the Defendant's summary judgment motion. By finding no evidence of discrimination or retaliation in connection with the progressive disciplinary actions imposed on Billingham and her entry into the Last Chance

---

[23] *Id.*

[24] *Id.*

[25] AS 18.80.280.

[26] AS 18.80.300(13).

Agreement, this Court's consideration is limited to whether DOT/PF's actual termination of Billingham and classification of her as ineligible for rehire were discriminatory or retaliatory.

## B. Wrongful Termination

Federal law bars employers from discharging an individual based on her race, color, religion, sex, or national origin.[27] To establish a prima facie case of discrimination under Title VII or the Alaska Human Rights Act[28], a plaintiff must provide direct or circumstantial evidence of discriminatory intent, or show that: (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees with qualifications similar to her own were treated more favorably.[29] If a plaintiff succeeds in doing this, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.[30]

Similarly, an employee bringing a retaliatory discharge claim under federal and Alaska law must present either direct evidence of retaliation, or show: (1) that the employee was engaged in a protected activity; (2) that an adverse employment decision was made; and (3) that there was a causal connection between the two.[31] If the employee succeeds in doing this, the burden shifts to the employer to articulate a legitimate nonretaliatory explanation for the discharge. If the employer does this, the burden shifts back to the employee, who must show that the explanation was a pretext for retaliation.[32]

---

[27] 42 U.S.C. § 2000e-2.

[28] AS 18.80.220.

[29] *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 n.5 (9th Cir. 2003).

[30] *Id.*

[31] *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 815 n. 24 (Alaska 2005).

[32] *Id.*

7

Because the Court gives preclusive effect to the Superior Court's decisions, Billingham's arguments are limited to the Defendant's actual dismissal of her following the Last Chance Agreement. Billingham contends that she was performing according to her employer's legitimate expectations, that other similarly situated individuals were treated more favorably, and that "DOT / PF has not acted in good faith . . . in accordance with the terms of the . . . Last Chance Agreement."

Beyond these conclusory assertions, Billingham has provided no evidence that would establish a prima facie case of discrimination in connection with her dismissal under the terms of the Last Chance Agreement. Specifically, she has not shown that she was performing according to her employer's legitimate expectations or that other employees subject to Last Chance Agreements were treated more favorably. In support of her opposition to the summary judgment motion, Billingham submitted 45 pages of exhibits, which consist primarily of unsupported allegations – much of which are hearsay – and inadequately identified Accident Summary logs and Incident Review reports. Much, if not all, of Billingham's exhibits are inadmissible, and thus improper for the Court to consider on summary judgment. Yet even if the exhibits were admissible, the Court finds nothing in them that would establish a prima facie case of discrimination in connection with Billingham's dismissal. In particular, the exhibits do not point to any other employees subject to Last Chance Agreements who received unfavorable reviews, but yet were not dismissed.[33] Indeed, as the Defendant points out, two male employees at Airfield Maintenance who entered into Last Chance Agreements were either fired or allowed to resign in lieu of termination.[34]

Even if Billingham were to establish a prima facie case, the Defendant has articulated legitimate, nondiscriminatory reasons for her dismissal. In addition to a demotion and thirty-day suspension, the Last Chance Agreement required Billingham to achieve a "mid-acceptable level" on her performance reviews after a year of working at the demoted level. The agreement further stated that "[o]ne more act of unacceptable behavior will result in dismissal." But Billingham failed to attain a mid-acceptable performance review. During the period from June 2003 to June 2004, she received five unacceptable, three low-acceptable, and two mid-acceptable ratings, and her overall

---

[33] *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

[34] Hartman Aff. ¶ 24.

8

rating for the year was low-acceptable.[35] Her supervisors noted a number of concerns similar to those that led to the progressive disciplinary steps that preceded the Last Chance Agreement; these concerns included:

– Causing breakage and unneeded wear and tear on equipment.

– Difficulty getting along with co-workers and failure to follow instructions.

– Unauthorized use of leave and wasting time.

– Failing to perform complete vehicle inspections and report needed repairs.

– Asking to operate pieces of equipment unnecessary to do the assigned job.

– Failing to complete work assignments.[36]

The record also indicates that in November 2003, Billingham became argumentative while reviewing the performance assessments with her supervisors and told them that she did not want to receive any more feedback.[37] Her supervisors, however, continued to draft progress reports rating Billingham's performance.

During her deposition, Billingham acknowledged that her performance reviews did not reach a mid-acceptable level or higher for the year following the negotiation of the Last Chance Agreement. She also admitted that she understood that a violation of the Agreement would result in her dismissal.[38] Given this, her dismissal on June 28, 2004 should have come as no surprise.

Billingham has also failed to make a prima facie case of retaliation based on her termination. Specifically, she has provided no evidence of a causal connection between her complaints to the EEOC and ASCHR and her dismissal. Nor has she shown that the Defendant's stated reason for her discharge – her failure to achieve the required performance standard under the Last Chance agreement[39] – was a pretext for retaliation.

---

[35] Hartman Aff. Ex. B.

[36] Hartman Aff., Exs. A-D.

[37] Billingham Dep. at 190-91; Harman Aff. ¶¶ 20-21.

[38] Billingham Dep. at 190.

[39] Hartman Aff., Ex. C.

9

On this record, the Court finds that the Defendant is entitled to summary judgment on the wrongful termination claim; Billingham has failed to make a prima facie case that her dismissal was discriminatory or retaliatory or to rebut the Defendant's evidence that her dismissal was based on legitimate, nondiscriminatory reasons. The Court further notes that Billingham's union found no basis for contesting the termination. Following her dismissal, Billingham filed a grievance with her union challenging the dismissal.[40] But after investigating the circumstances surrounding it, union officials concluded that Airfield Maintenance managers had adhered to the terms of the Last Chance Agreement and had justifiable grounds for terminating Billingham based on her failure to comply with the terms of the agreement and her unacceptable work performance.[41] Because of this, the union declined to arbitrate Billingham's grievance over the termination.[42]

### C. DOT/PF's Classification of Billingham as Ineligible for Rehire

Billingham's Second Amended Complaint also asserts a claim of retaliation in connection with the Defendant's alleged "blacklisting" of her from other DOT/PF jobs following her termination. Again, Billingham has failed to establish a prima facie case that the Department's classification of her as ineligible for rehire was retaliatory. In particular, she has not shown a causal link between the DOT's classification of her, and her earlier complaints to the EEOC and ASCHR.

And as with her wrongful termination claim, even if Billingham had established a prima facie of retaliation, she has not provided evidence that the Defendant's reason for refusing to rehire her was actually pretext for a retaliatory motive.

Under personnel rules governing classified state employment, the Division of Personnel may refuse to consider applicants who have been previously dismissed from public service for misconduct or unsatisfactory performance of duties.[43] In this case, the record shows that other employees who were terminated for cause by the Defendant also were deemed ineligible for rehire, and that the Defendant requested that Local 71 not refer those individuals for future employment

---

[40] Billingham Dep. at 198.

[41] Dougherty Dep. at 19; Johnson Dep. at 21, 27-28; 30-31.

[42] Dougherty Dep. at 23.

[43] Mushat Aff. ¶ 12; Mushat Aff. Ex. L.

with DOT/PF.[44] In particular, Charlotte Mushat, a human resource specialist with the state Division of Personnel, requested that two male employees – who also were dismissed based on performance issues – not be referred by Local 71 for positions at DOT/PF during the period between May 2003 and January 2005.[45] While there is apparently no DOT/PF blanket policy on this practice, the evidence indicates that employees dismissed for serious performance-related reasons are often deemed ineligible for rehire by DOT/PF.[46] That Mushat failed to immediately notify Local 71 of Billingham's ineligible status before she was hired for a non-permanent engineering technician position does not, on its own, raise a genuine issue of material fact as to Billingham's post-termination retaliation claim. Mushat's belated notification to the Airport Project Office – which resulted in Billingham's immediate dismissal from the non-permanent position – was in keeping with established practice and, thus, does not establish a causal connection to her engagement in a protected activity, namely, the filing of complaints with the EEOC.[47]

### D. Covenant of Good Faith and Fair Dealing

Billingham's amended complaint also asserts that the Defendant violated the covenant of good faith and fair dealing, which is implied in all employment contracts under Alaska law.[48] Breach of the covenant may be subjective or objective. As the Alaska Supreme Court has acknowledged, the "covenant does not lend itself to precise definition, but . . . requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement."[49] In essence, the covenant requires employers to "act in a manner which a reasonable person would regard as fair, which includes treating like employees alike.[50]

---

[44] Mushat Aff. ¶¶ 13-14.

[45] *Id.* at ¶ 14 and Ex. M.

[46] Newbill Dept. at 11-15, 32-33; Mushat Aff. ¶¶ 13-14.

[47] *See* Newbill Dep. at 32-34.

[48] *Reed v. Municipality of Anchorage*, 782 P.2d 1155, 1158 (Alaska 1989).

[49] *Jones v. Central Peninsula General Hosp.*, 779 P.2d 783, 789 (Alaska 1989).

[50] *Willard v. Khotol Services Corp.*, 171 P.3d 108, 114 (Alaska 2007).

Here, Billingham has provided no evidence in opposition to summary judgment demonstrating that she was treated unfairly, or treated differently from similarly situated employees. Her response asserts that "[E]mployees with a similar discipline and performance history similar to Ms. Billingham's were Treated more favorably . . . " and that "DOT/PF has not acted in good faith an[d] in accordance with the terms of the applicable Collective Bargaining Agreement and supplementary Last Chance Agreement in terminating [her] Employment . . . " But such conclusory allegations are not enough to defeat summary judgment. As with her termination and retaliation claims, Billingham has not offered admissible evidence that would raise a genuine issue of material fact as to whether she was treated unfairly by DOT/PF. The Defendant is, therefore, entitled to summary judgment on Billingham's breach-of-covenant claim.

## V.  CONCLUSION

The Defendant's motion for summary judgment (Dkt. 82) is GRANTED and the remaining claims in Plaintiff's Second Amended Complaint are DISMISSED WITH PREJUDICE.

Dated at Anchorage, Alaska, this 14th day of August 2008.

/s/ Timothy Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE